### SNELL *v.* CAMPBELL, Co. Treasurer, and others.

*(Circuit Court, N. D. Iowa, C. D.* June Term, 1885.)

1. TAX IN AID OF RAILROAD—RES ADJUDICATA.
    Action to set aside tax sale and enjoin execution of tax deed, in so far as the validity of the tax in controversy is concerned, *held,* barred by the former suit brought by complainant and others against the county treasurer to test the validity of said tax, and decided against them in the state court. See 55 Iowa, 553; S. C. 8 N. W. Rep. 425.

2. SAME—EFFECT OF REPEAL OF STATUTE IMPOSING PENALTY FOR NON-PAYMENT—REDEMPTION—AMOUNT OF TENDER.
    The repeal of a statute under which a penalty is assessed against a tax-payer who fails to pay his taxes within a specified time is a remission of the penalty, and it cannot be collected after such repeal, and, when such penalty has not been collected of the delinquent tax-payer, he may redeem from tax sale without making a tender of the amount of the penalty in addition to the amount of the tax properly assessed, with legal interest thereon.

In Equity.

*Cole, McVey & Clark* and *Barcroft & Bowen,* for complainant.

*J. F. Duncombe,* for defendants.

SHIRAS, J. The complainant, who is a citizen of the state of Illinois, avers in his bill of complaint that he is now, and was in 1877, the owner of certain realty, situated in Wahkonsa township, Webster county, Iowa; that in 1877 a tax of 5 per cent. was levied on said realty in aid of the Fort Dodge & Fort Ridgely Railroad Company, in pursuance of a vote of the electors in said township under the provisions of an act of the general assembly of the state of Iowa, approved March 15, 1877; that on or about the eighteenth of June, 1883, the treasurer of said Webster county, at a sale of lands for delinquent taxes, sold the realty owned by complainant for said railroad

tax, the same remaining unpaid; that Wm. M. Grant, one of the defendants, bought said realty at such tax sale; that the treasurer, in making said sale, added to the amount of the tax at five per cent. a penalty for the non-payment thereof at the rate of 1 per cent. a month for the first three months, 2 per cent. per month for the second three months, and 3 per cent. a month for the remaining months thereafter up to the day of the sale; that, unless restrained from so doing, the county treasurer will execute a treasurer's deed to the purchaser or his assignee, thereby casting a cloud upon complainant's title to said realty; that the act of the general assembly of March 15, 1877, is contrary to the provisions of the constitution of the state of Iowa; that the vote taken was not in pursuance of the act in question, and the tax levied is void and of no effect; that taxes in aid of railroads had already been voted in Wahkonsa township in excess of 5 per cent., and that the power to vote a tax under the statute was exhausted; that if valid no penalty attached to the failure to pay the tax assessed, and that the sale by the treasurer is void, because these penalties had been added.

To this bill the proper county officers, together with the purchaser at the tax sale and the owner of the certificate of sale, were made parties, and have fully answered thereto.

The first question made by defendants upon the pleadings and the evidence is that the matters relied upon by complainant have already been adjudicated against him, and that he is now estopped from relitigating them in the present action.

It appears that the complainant, Snell, uniting with a number of other tax-payers owning property in Wahkonsa township, filed a bill in equity in the district court of Webster county, Iowa, at the February term, 1879, against A. Leonard, the then county treasurer of Webster county, to enjoin and restrain the collection of the tax voted and levied in aid of the Fort Dodge & Fort Ridgely Railroad Company. In substance, the grounds of complaint were that the petition asking for a submission of the question of aiding the railroad was not signed by the requisite number of freeholders; that the trustees had no power to order an election; that the company had not complied with the provisions of the proposition submitted to the voters; and that the road was not properly constructed, and had been changed from a narrow to a standard gauge road.

A temporary injunction, restraining the treasurer from collecting the tax, was granted by the judge of the district court. The defendant answered the bill thus filed, and upon a hearing the temporary injunction was dissolved, and the bill ordered to be dismissed. The order dissolving the injunction is in writing, signed by the judge, and was made in vacation, and it is not shown that a formal judgment or decree based thereon was entered upon the records of the court. The plaintiffs, however, appealed the case to the supreme court of the state, and in that court attacked the constitutionality of the act of the gen-

eral assembly under which the tax was voted. The supreme court held the act constitutional, and affirmed the order or decree of the district court. See *Snell* v. *Leonard*, 55 Iowa, 553; S. C. 8 N. W. Rep. 425.

The defendants in the present suit plead and rely upon the action had in *Snell* v. *Leonard* as an adjudication estopping the complainant from again questioning the validity of the tax assessed upon complainant's property in aid of the Fort Dodge & Fort Ridgely Railroad Company.

Upon part of complainant, it is insisted that it has not been proven that there was any legal or binding adjudication had in that cause, in that it does not appear that the order of the judge dissolving the injunction and dismissing the bill ever ripened into a full and final decree entered of record during a term of the court. It clearly appears that the answer filed in that cause took issue upon the merits of the bill of complaint, and that the judge upon the hearing dissolved the injunction previously granted and ordered the dismissal of the bill. The complainants evidently treated this as the end of the case in the district court, and appealed the cause to the supreme court, stating in the notice of appeal that "the plaintiffs in said action have appealed from the judgment of the district court rendered in favor of the defendant at the March term thereof," etc.

In the supreme court the case was fully heard upon its merits, and the judgment of the district court was affirmed. Under these circumstances it is not open to the complainant to say that there was not an adjudication against him upon the merits of the controversy involved in the bill of complaint filed against the treasurer of Webster county.

Treating the record as sufficient evidence of an adjudication upon the merits of that controversy, the question then arises whether that adjudication bars the complainant from the relief sought in the present proceedings.

In *Cromwell* v. *Sac Co.*, 94 U. S. 351, the general rule applicable to this plea of *res judicata* is very fully and clearly stated. It therein appeared that one Smith had brought an action against Sac county upon certain coupons attached to bonds issued by the county. It was therein adjudged that the bonds were fraudulent, and, it not appearing that Smith was an innocent holder for value, it was further adjudged that he could not recover. Subsequently an action upon other coupons attached to the same bonds was brought in the name of Cromwell against Sac county, and by way of defense the adjudication in the case of *Smith* v. *Sac Co.* was pleaded, with the averment that Cromwell had been at all times the owner of the coupons sued on, and that the suit in name of Smith was really for his benefit. The supreme court held that,—

"There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or de-

mand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defense actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. * * * Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever. But when the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered; * * * only upon such matters is the judgment conclusive in another action."

Applying these principles to the facts of the case, the court held that the second suit, being upon different coupons than those involved in the first suit, was for a different cause of action; that the judgment in the former suit, holding the bonds invalid against the county, estopped the plaintiff from averring the contrary in the second suit, but that plaintiff was not estopped from showing that he was an innocent holder of the coupons declared on in the second suit, because that question was not involved in nor passed upon in the first suit.

In *Block* v. *Commissioners,* 99 U. S. 686, it appeared that one Lewis was the owner of 100 coupons attached to bonds issued by Bourbon county, Kansas. In 1873 he applied to the supreme court for a *mandamus,* for the purpose of compelling the county commissioners to levy a tax and provide for the payment of the coupons held by him. An alternative writ was issued, and the commissioners answered it, setting up, among other things, that the bonds and coupons held by Lewis were unauthorized by law, because a majority of the electors of the county had not sanctioned the issuing of the bonds. The supreme court gave judgment for the defendants, refusing the *mandamus.* Thereupon Lewis delivered the coupons to Block, who brought suit thereon, in reality in the interest of Lewis. To this suit, brought in the United State circuit court, the judgment in the *mandamus* case was pleaded as a defense, and the supreme court held it was a conclusive bar to the action.

In *Stout* v. *Lye,* 103 U. S. 66, the record presented the following facts: On the tenth of November, 1873, one Lye executed to the First National Bank of Delphos a mortgage on certain real estate in Allen county, Ohio, to secure a debt due the bank. On the twenty-ninth of December, 1875, John W. and Jacob O. Stout brought suit

in the United States circuit court for Northern district of Ohio against Lye and others to recover judgment on a debt due thereon. On the fifteenth of January, 1876, the bank commenced suit in the state court of Allen county against Lye for the foreclosure of its mortgage. To this suit the Stouts were not made parties. On the thirty-first of January, 1876, the Stouts obtained judgment against Lye in the United States circuit court. This judgment was a lien upon the mortgaged realty. On the twenty-third of February, 1876, the Stouts commenced a suit in the United States circuit court, making the bank a defendant, in which they sought to set aside the mortgage as illegal for want of authority to take it, and also seeking to have certain payments of usurious interest credited on the principal debt. On the seventh of March a judgment was rendered in the state court in the suit of the bank against Lye for the full amount of the note, and ordering a sale of the mortgaged property. Thereupon the bank answered in the suit pending in the United States court, setting up the judgment of foreclosure as a bar to the action on part of the Stouts. The supreme court held that the suit to foreclose the mortgage in favor of the bank was pending when the Stouts obtained a lien upon the realty by virtue of the judgment in their favor against Lye; that, consequently, they were in privity with Lye, and although they were not parties to the record in the foreclosure suit, they were nevertheless bound by the decree therein; that although Lye, in the foreclosure suit, did not in fact set up the defense of want of authority in the bank to take the mortgage, yet he was at liberty to do so, and that he could not, nor could the Stouts, afterwards be heard to say in the suit in the United States court that the mortgage was for any reason invalid or void.

In the cases of *Corcoran* v. *Chesapeake, etc., Canal Co.*, 94 U. S. 741, and *Louis* v. *Brown Tp.*, 109 U. S. 162, S. C. 3 Sup. Ct. Rep. 92, it is ruled that in chancery cases adverse interests between defendants will be deemed settled, as between such defendants, by a decree in the cause, if the parties had an opportunity of asserting their rights.

Applying the rules thus enunciated to the facts of the present case, what is the result? In the case brought in the state court, the present complainant was one of the complainants therein, and so far as he was concerned the record shows that that proceeding, like the present one, was brought to restrain and enjoin the collection of the 5 per cent. tax voted in aid of the Fort Dodge & Fort Ridgely Railroad Company and levied upon complainant's property. The object and purpose of both suits is identical, and the ultimate question presented for decision is the same, to-wit, whether the tax voted is legal and binding. The former suit was against the then treasurer of the county in his official capacity; the present suit is against the present treasurer, the auditor, and the purchaser at the tax sale. It is apparent that these latter parties are in privity with and represent exactly the same interests as did the defendant in the former suit. In the former suit the decision was that the act of the general assembly

under which the tax was voted was constitutional, and the tax was legal and binding, and the complainant's property liable therefor. The judgment in that case concluded the complainant upon these questions, no matter whether the same objections were then made to the validity of the tax or not.

It is not now open to the complainant in this case to litigate the validity of the tax in question. In the former suit, he had the opportunity to present for decision every question touching the constitutionality and validity of the tax voted; and as the two suits are for the same relief and based upon the same facts, the former adjudication concludes him, not only upon the objections he then made, but upon all he might have made. None of the points made, therefore, against the constitutionality of the act of the general assembly, or against the validity of the tax as voted and levied, are open for investigation before this court in the present cause.

The bill filed, however, presents another question, and that is as to the amount necessary to be paid in order to redeem the property from the tax sale. This sale did not take place until after the final decision of the case of *Snell* v. *Leonard*, and the question of the right of redemption and the amount to be paid was not involved therein. The rights of the parties growing out of the sale of the realty for the tax in question have not been adjudicated, and are open to contest in the present proceeding.

The stipulation of facts filed in the present cause shows that after the decision of the supreme court in the case of *Snell* v. *Leonard* was rendered, the complainant herein tendered to the treasurer of Webster county the amount of the tax assessed upon his property in favor of the Fort Dodge & Fort Ridgely Railroad Company, together with interest thereon at the rate of 10 per cent. up to the date of the tender, which was made on May 10, 1881. The treasurer refused to accept the amount thus tendered, and in June, 1883, sold the lands as already stated.

The reason assigned by the treasurer for refusing to accept the tender was that, under the act of the general assembly authorizing the voting and levy of the tax, the complainant must pay a penalty at the rate fixed in the general tax law of the state, and the question is now presented whether, under the act of the general assembly, this penalty can be exacted.

Counsel for complainant criticise the language of the act providing for the penalty, claiming that the provision that "said taxes shall be collected at the time or times specified in said order, in the same manner, and be subject to the same penalties for non-payment after they are collectible, as other taxes, or as may be stated in the petition asking said election," is meaningless, because it declares that the *tax* shall be subject to the penalty, instead of declaring that the property, or the owner thereof, is subjected to the penalty.

While the language used may be open to exception, still it is suf-

ficiently clear that the legislature intended to thereby provide that if not paid when due, the tax was liable to be increased by the amount of the penalty. By section 3 of the act it is provided that the aggregate amount of the tax to be voted or levied under the act in any township shall not exceed 5 per centum of the assessed value of the property in the township. Section 4 provides that the moneys collected under the provisions of the act shall be paid by the county treasurer to the treasurer of the railroad company. All sums, therefore, collected as penalties belong to the railroad company. In *Barnes* v. *County of Marshall*, 56 Iowa, 20, S. C. 8 N. W. Rep. 677, it was decided that the county acquires no beneficial interest in the taxes voted in aid of the railroad company and paid to the county treasurer, and is not liable for the repayment thereof if the company forfeits the same. All sums, therefore, collected from the tax-payers under the provisions of the act in question, whether called a tax or a penalty, are sums contributed by the property owner to the railroad company for the purpose named in the statute, to-wit: to aid in the construction of a designated line of railroad.

As already stated, the limitation on the amount of tax that can be levied under the act is 5 per cent. If, therefore, as in the case now under consideration, the full amount of 5 per cent. is levied as a tax, it is very questionable whether any further sum can be collected and paid to the railroad company, even under the guise of a penalty. This additional amount is not to cover expenses. It goes into the treasury of the company, just as the amounts realized from the 5 per cent. tax do, and for the same purpose. Under the decision of the supreme court of Iowa, that the beneficial interest in the tax voted in aid of a railway belongs, not to the county, but to the railway company, it is difficult to distinguish the amount due from a given tax-payer to the company for the tax voted from any other debt he might owe to the company. The tax-payer is under legal obligation to pay, and the railroad company has a legal right to demand and enforce payment of the tax. The statute, however, expressly limits the amount that the tax-payer can be compelled to pay to 5 per cent. If, therefore, a tax for the full amount of 5 per cent. is levied, is it within the power of the county treasurer or the raiload company to insist upon payment of a sum equal to 10 per cent. if the tax-payer does not promptly pay the tax when due?

The claim is not made that the additional sum is to be considered as interest upon an overdue debt. In that case the rate would be fixed by other provisions of the law. The additional sum is claimed to be due as a penalty; but it is a penalty, not for a failure to pay a tax due to and belonging to the state or county, but for a failure to pay a sum due to the railroad company. The penalty, when paid to the county treasurer, belongs to the railway company, and in effect is a sum paid by the tax-payer to aid in the construction of a line of railway. In no respect, therefore, does it seem to differ from the

sum paid as a tax, and there is reason in the proposition that calling the sum a penalty does not change the fact that it is a sum paid by the tax-payer to aid in the construction of a railway, and that under the act in question the sums thus collected from the tax-payer for that purpose shall not exceed in the aggregate the amount of 5 per cent.

But, without deciding this proposition, it is clear that under the provisions of the act in question the tax-payer cannot be subjected to a tax greater in amount than 5 per cent. If any further sum can be collected, it must be as a penalty; that is, an amount assessed against the tax-payer over and above the full legal amount of his tax as a punishment for his failure to pay the sum due as a tax at a given date. The sum in excess of 5 per cent., if collectible at all, can only be collected as a penalty, and not as part of the tax. If, therefore, it is a penalty pronounced against the delinquent tax-payer for the failure on his part to perform the duty and obligation of payment cast upon him by the act of the general assembly, then as a penalty its enforcement may be waived, and a repeal of the act providing for the penalty, before the penalty is enforced, will terminate the right to enforce the penalty. "The repeal of the law imposing the penalty is of itself a remission." *State* v. *Baltimore & O. R. Co.*, 3 How. 534; *Confiscation Cases*, 7 Wall. 454.

The act of March 15, 1877, was expressly repealed by chapter 159 of the acts of the Twentieth general assembly. Being thus repealed, its penal provisions cannot be enforced; that is to say, the repeal of the act terminated the right to collect any penalty that remained uncollected at that date. If the realty had not been sold at a tax sale by the treasurer before the repeal of the act, it could not now be sold in order to collect the penalty claimed.

The record shows that in 1881 the complainant tendered to the treasurer the full amount of the 5 per cent. tax assessed upon his property, with 10 per cent. interest added, but the treasurer refused to accept the tender, and in June, 1883, sold the realty for the taxes and penalty added. The complainant, denying his liability to the penalty, brought the present action in order to determine whether such penalty could be collected from him. He has, as yet, paid nothing, and one object of the present suit is to determine the amount which he is under legal obligation to pay in order to discharge the tax assessed against him, and redeem his property from the sale made thereof. It cannot, therefore, be fairly said that the penalty in this case has been collected and distributed, so far as the question lies between the complainant and the railway company. The right to collect the penalty is in dispute, and if the complainant can show that he has been relieved from the payment thereof, he has the right so to do, as against the company. So far as the tax is concerned, the company may obtain or perfect a vested right therein before it is collected; but to the penalty no vested right attached until it is collected, and thus placed

beyond the power of the tax-payer to contest its validity. So long, therefore, as the right to the penalty has not vested in the company by its collection, the same may be remitted by the legislature, and, in the language of the supreme court of the United States in *State* v. *Baltimore & O. R. Co.*, *supra*, "the repeal of the law imposing the penalty is of itself a remission."

What the rule would be as against some third party not interested in the tax, who should, at a tax sale, bid in the property for the tax and penalty, and actually pay such amount into the treasury, is not considered or determined. The certificate of sale in this case was issued to W. M. Grant, who was a stockholder in the company. It does not appear that he has as yet paid any money on such purchase, or that he bought the property in his own right. The testimony of the county treasurer, who conducted the sale, shows that no money was paid him on the bid made, but that he accepted the receipt of the treasurer of the company instead of the money, and delivered the certificate of sale to the treasurer.

Under these circumstances the question of the right to exact the penalty as a condition to the right to redeem the land from the sale is one solely between complainant and the company, and, as between them, the right to exact the penalty, if it ever existed, was terminated by the repeal of the act under which the tax was voted. The complainant, having pleaded the tender made May 10, 1881, and relied thereon, which was for the full amount of the tax levied, and interest thereon at 10 per cent. to that date, has thereby admitted that, equitably, that amount was then due to the railroad company. The payment of that amount, with interest thereon at 6 per cent. from May 10, 1881, will fully discharge the indebtedness due from complainant, and relieve his property from any lien or claim by reason of the tax levied in aid of the Fort Dodge & Fort Ridgely Railroad Company.

The order and decree will therefore be that, upon the payment of the amount above indicated to the treasurer of Webster county within 90 days from the date of this decree, the sale of said realty for taxes as aforesaid shall be canceled and set aside, and the defendants, and parties claiming under them, be restrained and enjoined from executing or receiving a treasurer's deed of said realty, or from asserting any title to said realty under the sale for taxes made June 18, 1883. The complainant, having sought by his bill to set aside the sale as wholly void, and escape the payment of any sum, and having failed to make good his bill in these particulars, is adjudged to pay the costs of this proceeding.