## TERRITORY OF NEW MEXICO ex rel. JOSEFA P. CASTILLO, Appellee, v. JOSE L. PEREA, Treasurer, etc., Appellant.

### SYLLABUS BY THE COURT.

1. TAXES—DELINQUENT—PENALTIES.—The provision of section 4066 requiring twenty-five per centum per annum to be added to the taxes in case of delinquency is repealed by section 34 of chapter 22, L. of 1899, and section 10, chapter 22, substitutes therefor one and four per centum as penalty in lieu thereof.

2. ID.—Where taxes become delinquent after the first day of July, 1899, one per centum penalty should be added upon such delinquency and an additional penalty of four per centum on the second day of the month following such delinquency as provided in the "Duncan Act."

3. TAXES—ASSESSMENT.—Assessment of property as "property of the estate of Jesus M. Castillo, deceased," is not a valid assessment, and no penalty can be recovered by law, upon default in the payment of taxes levied thereon.

*Appeal* from the Dictrict Court of Bernalillo county, Second Judicial District. Affirmed.

Statement of the case by the court.

On the first day of March, 1894, Jesus M. Castillo personally returned for taxation to the assessor of Bernalillo county property to the value of $16,360.00 and taxes were levied upon the same less two hundred dollars of an exemption allowed him as the head of a family. The amount of taxes levied upon said property for that year was $343.40. On the seventeenth day of January, 1895, Jesus M. Castillo died, leaving the appellee, his widow, and sole heir, surviving him. In 1895 the property owned by Jesus M. Castillo in his lifetime and which was valued by the assessor at $12,038.00 was assessed against the estate of Jesus M. Castillo and taxes to the amount of $261.86 were levied on said property for that year. No part of the above taxes having been paid in the meantime, the appellee, on the tenth day of October, 1899, tendered to the defendant treasurer of the county of Bernalillo, $622.44, and demanded a receipt in full for all of the said taxes and penalties. The defendant refused to accept the amount tendered and the appellee thereupon brought this suit to compel the appellant defendant as such officer to receive and receipt for the amount tendered. Upon the hearing the court granted the peremptory writ of mandamus to compel the treasurer and collector of Bernalillo county to accept the money tendered in full of all taxes and penalties and entered judgment accordingly. From this judgment the defendant appealed to this court.

NEILL B. FIELD for appellee.

T. A. FINICAL for appellant; EDWARD L. BARTLETT, Solicitor general; GEORGE W. JOHNSON of counsel.

McFIE, J.—There being no controversy as to the amount of the taxes levied for the year 1894, the meritorious question to be determined is, whether interest to the amount of 25 per centum or penalty to the amount of 5 per centum should be added to the tax levied for the year 1894.

The second assignment of error is, "That the court erred in holding that plaintiff should pay only 5 per centum interest and penalty on the $343.40 tax levied in 1894." To determine this an examination of several sections of the statutes of this Territory becomes necessary. The first statute enacted in New Mexico providing for the payment of interest in the nature of a penalty on delinquent taxes, was passed in the year 1882, and the material provision of that law is found in section 2559, Compiled Laws of 1884, and is as follows:

TAXES: delinquent: penalties.

"On the first day of November the unpaid taxes for the current year shall become delinquent and shall draw interest at the rate of 25 per centum per annum from the time that they become delinquent."

Thus it will be observed that the 25 per centum provided to be added to delinquent taxes under this statute, was designated interest, and not penalty. This section of the statute was amended in 1893 so as to read as follows: "On the first day of January in each year half of the unpaid taxes for the year last past and on the first day of July, in each year the remaining half of the unpaid taxes for the year last past, shall become delinquent, and shall draw interest at the rate of 25 per centum per annum, but the collector shall continue to receive payments of the same after the first days of January and July until the day of sale.". This section, as thus amended, became section 4066 of the Compiled Laws of 1897, and there can be no doubt that under that section delinquent taxes were subject to the 25 per centum additional, declared to be interest. On the thirtieth day of January, 1895, the Legislature provided that all taxes paid prior to July 1, 1895, should bear no interest, thus preserving the interest upon all delinquent taxes which were not paid on or before July 1, 1895, by specific provision to that effect. On the eighteenth day of March, 1897, the Legislature again extended the

time for the payment of all delinquent taxes until the first day of July, 1897, but also made this applicable to taxes that were paid on or before that date by specifically providing. that no interest should be charged upon such taxes as were actually paid at that date, and we think as to these two acts of the Legislature extending the time there can be no doubt of the intention of the Legislature to preserve the right to collect the interest legally attaching to delinquent taxes where the same were not paid at the date fixed by the act. The law as thus stated, continued in force until the first day of March, 1899, when section 4066 was materially amended by what is now known as the "Duncan Act." Section 10 of chapter 22 of the Laws of 1899 is as follows: "Section 10. That section 4066 of the Compiled Laws of 1897 be amended so that the same shall read as follows: On the first day of January in each year half of the unpaid taxes for the year last past, and on the first day of July, in each year the remaining half of the unpaid taxes for the year last past shall become delinquent, and there shall be added on the second days of January and July one per centum of the amount of such delinquent taxes as a penalty for non-payment. And unless said taxes shall be paid on or before the first day of the following month the collector shall add an additional penalty of four per centum of the amount of delinquent taxes and upon the happening of the first delinquency above provided for the collector shall immediately notify the delinquent tax-payer in writing either personally or by mail of such delinquency and of the fact that one per centum penalty had been added to his taxes giving the amount then due, and that unless said taxes and penalty shall be paid the first day of the following month, an additional penalty of four per centum will then be added  *  *  *." The amendment of this section as will be seen, effected a radical change in the section. As it existed prior to that time, the interest provided for upon delinquencies was 25 per centum, whereas in the section as amended, there is only 5 per centum to be added as penalty, and nothing whatever is said about interest. This amendment indicates an intention on the part of the Legislature to change the amount of penalty to be added in case of delinquencies in the payment

of taxes as there is such a radical difference in the amount to be charged between the provisions of the former section and the section as amended. This radical change also, indicates a belief on the part of the Legislature that the former provision was too drastic and tended to retard the payment of taxes rather than facilitate their payment; and that a more reasonable penalty would be more efficient and fair than that provided for under the original section. That it was not the intention to provide both the 25 per centum interest and the 5 per centum penalty provided for in the section as amended, section 11 of chapter 22 removes all doubt, and it would seem to be clear that the one and four per centum provided for in the amended section, was intended to supplant the provision for the 25 per centum interest as in the original section. Section 4067 of the Compiled Laws of 1897 used the word "interest" instead of the word "penalty" just as it was used in section 4066. Section 11 of the "Duncan Act," therefore, amends section 4067 also by striking out the word "interest" and inserting in lieu thereof the word "penalty," so as to conform to the change made in section 4066. Thus the word "interest" is swept away and the 1 and 4 per centum penalty is substituted therefor, and when thereafter taxes become delinquent, it follows that the additional amount to be added to the tax levied shall be as provided by section 10 of chapter 22 of the Laws of 1899, and not the 25 per centum interest formerly existing. The "Duncan Act" goes further than this and in its repealing clause we find this provision:

"All acts and parts of acts in conflict herewith, either general or special, are hereby repealed, and this act shall take effect and be in force from and after its passage."

This provision of the "Duncan Act" taken in conjunction with the amendment provided for in section 10 of the act, has the effect of repealing absolutely the 25 per centum interest provided for in section 4066 as it existed prior to the amendment, as the provisions of section 4066 are undoubtedly in conflict with the provisions of that section as amended by section 10 of the "Duncan Act."

Counsel for the appellant insist that section 34 of the "Duncan Act" (which is the last section of that act) does

not apply to taxes assessed for prior years, and refers to that portion of the section which provides that:

"The provisions of this act shall not, affect or be applicable to taxes heretofore assessed or which are delinquent at the date of the approval hereof, except that suit for the same may be brought and judgments rendered in the manner provided by this act, but the validity of such delinquent taxes shall be determined by the law in force at the time of the making of the assessment therefor."

But it will be observed that the succeeding clause of the section refers to all taxes delinquent prior to the passage of this act, as it specifically says: "The time for the payment of all taxes now delinquent is hereby extended until May 1, 1899." The only exemption from the operation of this act seems to be taxes in litigation at the time the act was passed. The taxes now in controversy were not in litigation and consequently were not included in the exception. It will be observed that this section makes no mention whatever of interest or penalties, but uses the word "Taxes" throughout the section, even in that portion which extends the time for payment. The omission of the word "penalties" from this section would seem to have been intentional on the part of the Legislature, and is consistent with the provision of the section extending the time for the payment of all delinquent taxes until May 1, 1899. The effect of this latter provision is to set aside all delinquent periods fixed prior thereto, and to extend the time at which all taxes shall become delinquent until the first day of May, 1899. There is no reservation whatever in this section as in the former acts of the Legislature extending the time. The language is essentially different. It is not provided in this extension that it shall only apply to taxes paid on or before the first day of May, 1899, and shall not apply to unpaid taxes. There is no reservation whatever in this act extending the time for the payment of taxes, and it could not well be contended, that if a person paid taxes on or before the first day of May, 1899, he would not have been permitted to pay the original tax without any penalty whatever. It would seem, therefore, that the Legislature, intending to extend the time for the payment of all delinquent taxes until

the first of May made the section apply only to the original tax and not to penalties which by this act were to be released and rebated in the extension of the time for payment. On the sixteenth day of March, 1899, fifteen days after the passage of the "Duncan Act," an act was passed by the same Legislature with the following provisions:

"All accrued penalties and interest upon taxes now or hereafter in this year delinquent shall be remitted upon all such taxes which have been or shall be paid on or before the first day of July, A. D. 1899."  *  *  *

And a proviso is added to the section exempting from its application taxes which were at the time the subject of litigation. In this act there is a reservation of penalties upon taxes now or hereafter in this year delinquent. This act cannot have the effect of re-imposing penalties which have by the effect of former legislation been set aside and destroyed. If such was the attempt of the Legislature, it was beyond the power of the Legislature to accomplish this result. Commonwealth v. Standard Oil Co., 101 Pa. St. 150; Norris v. Crocker, 13 Howard, 429; State of Maryland v. B. & O. R. R. Co., 3rd How. 551; Suell v. Campbell, 24 Fed., 880; State v. Mayor, etc., of Jersey City, 37 N. J. L. 39; Lewis v. Foster, 1 N. H. 61.

It may be said that this act is not entirely free from difficulty if regarded without reference to the former legislation, but in our opinion the true construction of all this legislation is that chapter 22, by extending the time of payment of all taxes then delinquent until May 1, 1899, abolished all past penalties or interest, and that chapter 52 granted a further extension until July 1, 1899, with a special provision with reference to taxes then in litigation. The act of March 16, has not nor was it intended to have any retroactive effect beyond the passage of the "Duncan Act," and indeed to afford that act retroactive effect prior to that act would be practically a re-enactment of the provisions of section 4066 as it was prior to its amendment by section 10 of the "Duncan Act." The reasonable view to take of the act is, that the purpose of the Legislature was to extend the time of payment to the first of July and granting immunity from penalty up to that time, and retain such penalties as

existed by law after that date upon unpaid taxes and that the penalties to be imposed were those provided for in the "Duncan Act" in connection with which this act should be considered. The "Duncan Act" made provision for a penalty on the first day after taxes became delinquent, of one per centum, and the first day of the following month a further penalty of 4 per centum, and the effect of the extension under the "Duncan Act" and that of March 16, 1899, when considered together, would authorize this additional 5 per centum to be added to the taxes assessed upon all those who failed to pay their taxes on or before the first of July, the latest day fixed. The record shows that the appellee failed to pay the taxes assessed for the year 1894, until the tenth day of October, and she was therefore, subject to penalty. The only penalty which the statutes at that time provided for was the five per centum prescribed by the "Duncan Act." The court below found this to be the proper penalty to be added to the tax levied against the appellee, and being a correct finding, the second ground of error is not well assigned.

The third assignment of error, is that "The court erred in holding that the plaintiff should pay the $261.86 taxes levied in 1895, and would be entitled to a receipt in full without the payment of interest or penalty thereon." The record shows that Jesus M. Castillo died prior to the assessment of these taxes for the year 1895, and that it was assessed against the "estate of Jesus M. Castillo" and not to the appellee who was the sole heir and widow of the deceased, and who became the owner of the real estate assessed immediately upon the death of Jesus M. Castillo; nor was the personal property assessed either in the name of the heir or the administrator. The appellee, as the record shows, tendered the exact amount of the tax levied without any penalty added thereto, and did this upon the ground that the assessment was void in that it was not assessed to the owner of the property or to the legal representatives of the estate, it appearing that part

ID.: taxes: delinquent: penalty.

of the property assessed being real estate and part of it
personal estate in the hands of an administrator. While
denying the validity of the assessment, the appellee tenders
the exact amount of the taxes assessed for the year 1895, for
the reason that the same might still be assessed by the
proper officer in the manner provided by statute, and ap-
pellee disclaims any desire to impose this burden upon the
officer having authority to make a new assessment. With-
out deciding whether or not this would be a valid assess-
ment, if the same had been made since the passage of the
"Duncan Act," or subject to its provisions, this assessment
does not seem to have been made in conformity with the
law existing at the time it was made. At that time section
4026 provided that all taxable property shall be listed, as-
sessed and taxed each year in the name of the owner thereof
on the first day of March. Section 4034 authorized the as-
sessment of real estate to unknown owners only in the
event that the owner's name was unknown and the assessor
finds it impracticable to obtain the name. It is not con-
tended in this case that the owner's name was not known so
as to authorize the assessment in any other than in the
name of the owner as provided by law. The appellee in this
case was undoubtedly the owner of the real estate from the
time of the death of Jesus M. Castillo, and the ownership
of the personal property was either in the appellee, who was
the sole heir and to whom this property descended sub-
ject to the payment of the indebtedness against said estate,
or the ownership was vested in the administrator, the legal
representative of the estate. The assessment was not made
in the name of either, and assessment against the property
of the estate of Jesus M. Castillo was not an assessment in
the name of the owner, as required by the statute. No rea-
son appears from the record why the property was not as-
sessed as the law required, and such being the case, the
validity of the assessment depended upon its compliance
with the law, and was void by reason of such failure.

The assessment of this property being void, the collec-
tion of the tax could not be enforced in the courts, and if

this could not be done, it is clear that penalties could not be collected. The appellee, therefore, was under no legal obligation to tender the amount of the tax assessed for the year 1895 until a valid assessment of the property of the appellee had been made, but the appellee has the right to voluntarily tender the amount of the taxes and thereby avoid further assessment which the law authorized. But she was under no obligation to tender therewith penalties which had not legally accrued. That the amount tendered for the year 1895 was the full amount of the tax levied, and there being no penalties legally due thereon, it was the duty of the treasurer and collector to accept the same in full of all taxes and penalties against the appellee for that year.

*TAXES: assessment.*

This brings us to the first assignment of error which is, "that the court erred in granting the writ of mandamus, as prayed for by the plaintiff. A writ of mandamus may properly issue against an officer to require the performance of a legal duty. It is not the province of a writ of mandamus to control the discretion of an officer where a discretion is vested in him. In this case it appears that the full amount of taxes and all penalties legally due for both years was tendered the officer, and in such event, it is the legal duty of the officer to accept and receipt for the same. The court below held, that the appellant had failed to perform a legal duty by refusing to accept and receipt for the tax and penalties tendered him in full of the amount due, and properly awarded the peremptory writ of mandamus to require the performance of his legal duty; therefore, this assignment of error is overruled.

The judgment of the court below awarding the peremptory writ of mandamus was the proper judgment in the cause, and the judgment of the lower court, is, therefore, affirmed with costs.

Parker, J., and Mills, C. J., concur.