# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMSC-018

Filing Date: July 23, 2020

No. S-1-SC-38041

STATE OF NEW MEXICO ex rel.
Representative BRIAN EGOLF,
Senator JACOB CANDELARIA,
Senator MIMI STEWART,
Representative NATHAN SMALL,
Governor MICHELLE LUJAN GRISHAM,
and Navajo Nation President
JONATHAN NEZ,

       Petitioners,

v.

NEW MEXICO PUBLIC REGULATION COMMISSION,
Commissioner VALERIE ESPINOZA, Commissioner
JEFFERSON L. BYRD, Commissioner CYNTHIA B.
HALL, Commissioner THERESA BECENTI-AGUILAR,
and Commissioner STEPHEN FISCHMANN,

       Respondents,

and

PUBLIC SERVICE COMPANY OF NEW MEXICO,

       Intervenor-Real Party in Interest.

## ORIGINAL PROCEEDING

Released for Publication December 15, 2020.

Keleher & McLeod, P.A.
Thomas C. Bird
Albuquerque, NM

for Petitioners Representative Brian Egolf, Senator Jacob Candelaria, Senator Mimi
Stewart, Representative Nathan Small

New Mexico Office of the Governor
Matthew L. Garcia, Chief General Counsel
Santa Fe, NM

for Petitioner Governor Michelle Lujan Grisham

Navajo Nation Department of Justice
Paul W. Spruhan
Window Rock, AZ

for Petitioner Navajo Nation President Johnathan Nez

Michael C. Smith, Acting General Counsel
Judith Ellen Amer, Associate General Counsel
Santa Fe, NM

for Respondents

PNM Resources, Inc.
Patrick V. Apodaca, General Counsel
Stacey J. Goodwin, Associate General Counsel
Albuquerque, NM

Miller Stratvert P.A.
Richard L. Alvidrez
Albuquerque, NM

for Intervenor-Real Party in Interest Public Service Company of New Mexico

**OPINION**

**BACON, Justice.**

**{1}**     In this original proceeding, members of both houses of the Legislature, along with the Governor and President of the Navajo Nation (collectively Petitioners), filed an emergency petition on behalf of the State of New Mexico seeking a writ of mandamus against the New Mexico Public Regulation Commission (Commission). Petitioners seek a writ of mandamus to direct the Commission and its individual commissioners to apply the Energy Transition Act (ETA), NMSA 1978, §§ 62-18-1 to -23 (2019), to proceedings related to Public Service Company of New Mexico's (PNM) abandonment of Units One and Four of the San Juan Generating Station (San Juan). The critical question in the case before us is whether the Commission has the authority to initiate an abandonment proceeding. Concluding that the Commission does not have such authority, we granted Petitioners' writ of mandamus on January 29, 2020, and ordered the Commission to apply the ETA to abandonment proceedings for San Juan Units One and Four. *See* Order at 2, *Egolf v. New Mexico Pub. Regulation Comm'n*, S-1-SC-38041 (Jan. 29,

2020); Writ of Mandamus at 2, *Egolf*, S-1-SC-38041 (Jan. 29, 2020). As stated in our January 29, 2020, order, we issue this opinion to more fully explain this Court's ruling. Order at 3, *Egolf*, S-1-SC-38041.

**{2}** The Commission exceeded its constitutional and statutory authority by initiating proceedings for abandonment of San Juan Units One and Four, and as a result, lawful abandonment proceedings were not initiated until after the ETA became operative. As the ETA was effective at the time abandonment proceedings began, the Commission had a nondiscretionary duty to apply the ETA. The Commission's equivocation to administer applicable law to abandonment proceedings necessarily invoked this Court's mandamus jurisdiction in order to preserve New Mexico's constitutionally required separation of powers. *See* N.M. Const. art. III, § 1.

## I.    BACKGROUND

### A.    The Commission's Initiation of Abandonment Proceedings

**{3}** The genesis of this case is rooted in the proceedings for abandonment of San Juan Units Two and Three, which PNM initiated in 2013. San Juan is a four-unit, coal-fired power plant near Farmington, New Mexico, that is operated and partially owned by PNM. Previous abandonment proceedings targeted only San Juan Units Two and Three and were docketed by the Commission as Case No. 13-00390-UT (2013 Docket).[1]

**{4}** Abandonment of Units Two and Three was authorized by the Commission through a modified stipulation (Modified Stipulation). The Modified Stipulation served as the final order in the 2013 Docket but also contained provisions for the future use of the remaining units at San Juan—Units One and Four. *See New Energy Econ.*, 2018-NMSC-024, ¶¶ 6, 9-10. Of significance to the instant case, Paragraph 19 of the Modified Stipulation required PNM to seek Commission review of any agreements that would commit PNM to the use of Units One and Four past 2020. Paragraph 19 states, in relevant part:

> After July 1, 2018, but no later than December 31, 2018, PNM shall make a filing with the commission, and serve all parties to this case, to determine the extent to which [San Juan] should continue serving PNM's retail customers' needs after June 30, 2022. The filing shall be made before PNM has made a binding commitment to a post-2022 coal supply agreement, but after PNM has received firm pricing and other terms for the supply of coal at [San Juan], unless PNM proposes not to pursue a coal supply post-2022. . . .

---

[1]For more factual details regarding the abandonment of San Juan Units Two and Three, as well as information about San Juan as a whole, see *New Energy Economy, Inc. v. New Mexico Pub. Regulation Comm'n*, 2018-NMSC-024, ¶¶ 2-10, 416 P.3d 277.

Paragraph 19 further provided that signatories to the Modified Stipulation agreed "to support expedited Commission review and decision within six months after the date of PNM's filing."

{5}     In response to Paragraph 19, PNM filed a "verified compliance filing" on December 31, 2018, in the 2013 Docket. The compliance filing informed the Commission that PNM did not intend to operate San Juan past 2022 and that a majority of San Juan's owners sought to close San Juan by 2022. Because PNM did not intend to operate San Juan past 2022, PNM did not consider it necessary to request the Commission's review or approval of PNM's planned course of action, as had been contemplated by Paragraph 19. For these reasons, PNM asked that the compliance filing be accepted in lieu of procedures outlined in Paragraph 19. PNM further stated it would formally file for abandonment of San Juan Units One and Four in the second quarter of 2019.

{6}     On January 10, 2019, the Commission responded to PNM's compliance filing by opening a new case, Case No. 19-00018-UT (January 2019 Docket), and entering an order simultaneously in that newly created docket and the 2013 Docket. In that order, the Commission requested all parties to the 2013 Docket to brief whether the Commission should take one of two courses of action. The Commission's first proposed course of action was to accept PNM's compliance filing and not take further action until PNM filed its abandonment application in the second quarter of 2019. The second proposed course of action called for the Commission to instead immediately initiate abandonment proceedings for San Juan Units One and Four under the newly created January 2019 Docket, because PNM had "irrevocably committed itself to abandonment of [San Juan]." Based on the parties' responses, the Commission proceeded with the second proposal and entered an order on January 30, 2019 (Abandonment Order) initiating an abandonment proceeding pursuant to authority ostensibly derived from NMSA 1978, Section 62-9-5 (2005). The Abandonment Order mandated that PNM file an application for abandonment by March 1, 2019.

B.      PNM's Petition for Writ of Mandamus

{7}     After the Commission denied PNM's February 7, 2019, motion to reconsider the Abandonment Order, PNM petitioned this Court for an emergency stay in abandonment proceedings and for a writ of mandamus ordering the Commission to vacate the Abandonment Order. We did not immediately rule on PNM's petition for mandamus but granted the request for an emergency stay in proceedings.

{8}     While matters were stayed under this Court's order, the Governor signed the bill creating the ETA, which would go into effect on June 14, 2019. 2019 N.M. Laws, ch. 65, § 1; *see* §§ 62-18-1 to -23. On June 26, 2019, this Court denied PNM's petition for writ of mandamus and lifted the stay on abandonment proceedings.

{9}     On July 1, 2019, PNM filed its consolidated application for abandonment of San Juan. The Commission, however, adjudged that a valid abandonment proceeding had already begun, prior to the enactment of the ETA, when the Abandonment Order

compelled PNM to file an abandonment application in the January 2019 Docket. The Commission therefore found that PNM's July 1, 2019, application was responsive to the January 30, 2019, Abandonment Order. This led to the Commission's conclusion that abandonment and financing proceedings should proceed under the January 2019 Docket, which—according to the Commission—had been lawfully opened pursuant to the Commission's authority vested in Section 62-9-5. The Commission, however, opened a new docket, Case No. 19-00195-UT (July 2019 Docket), to which the Commission assigned review and approval of replacement resources. In sum, the Commission ordered bifurcated proceedings, assigning abandonment and financing matters to the January 2019 Docket, and review of replacement resources to the July 2019 Docket.

**{10}** After the Commission had bifurcated the proceedings, Western Resource Advocates (WRA)—a party to San Juan abandonment proceedings—petitioned the Commission to clarify whether it intended to apply the ETA to abandonment and financing proceedings. The Commission denied WRA's motion, noting that the Commission was considering the law applicable to San Juan abandonment proceedings but expressly declining to elaborate on whether the Commission would apply the ETA.

**{11}** Lacking clarification from the Commission, PNM along with WRA and several other interested parties moved this Court to clarify why it had lifted its March 1, 2019, stay of the Abandonment Order. Specifically, clarification was sought as to whether this Court had lifted the stay on June 26, 2019, and denied PNM's previous petition for writ of mandamus because the Court considered the case moot in light of the passage and enactment of the ETA. Alternatively, the parties sought a writ of mandamus to compel the Commission to apply the ETA to abandonment proceedings. On October 3, 2019, we denied both the motion for clarification and the alternative petition for writ of mandamus.

### C.   The Instant Petition for Writ of Mandamus

**{12}** By October 2019 the Commission had not yet informed the parties whether it would apply the ETA to abandonment proceedings, despite abandonment proceedings purportedly beginning in January 2019. Indeed, Petitioners' briefing expressed that the Commission did not intend to make such a decision until April 2020. Alleging that the Commission's equivocation on the ETA's applicability encroached upon the Legislature's authority and that the Commission's equivocation was causing irreparable economic harm, Petitioners petitioned this Court for a writ of mandamus to compel the Commission to apply the ETA to San Juan abandonment proceedings.

**{13}** Given the exigencies of the matter, we expedited briefing and held oral argument on January 29, 2020. After oral argument, we orally ruled that (1) this Court had proper mandamus jurisdiction in this matter, (2) Petitioners' petition for writ of mandamus was granted, and (3) the Commission must apply the ETA to abandonment proceedings and vacate the Abandonment Order. We entered a writ of mandamus and an order reflecting our oral rulings. Writ of Mandamus at 2, *Egolf*, S-1-SC-38041 (Jan. 29, 2020); Order at 2, *Egolf*, S-1-SC-38041 (Jan. 29, 2020). This opinion follows.

## II.   JURISDICTION

**{14}**   This Court has original mandamus jurisdiction over this matter. Article VI, Section 3 of the New Mexico Constitution grants this Court original jurisdiction in mandamus, as well as the power to issue writs of mandamus against "all state officers, boards, and commissions[.]" *See also State ex rel. League of Women Voters v. Herrera*, 2009-NMSC-003, ¶ 12, 145 N.M. 563, 203 P.3d 94 ("The New Mexico Constitution gives this Court the power to issue writs of mandamus 'against all state officers.'" (quoting N.M. Const. art. VI, § 3)). A writ of mandamus "may be issued to any inferior tribunal . . . to compel the performance of an act which the law specially enjoins as a duty resulting from an office." NMSA 1978, § 44-2-4 (1884). A writ of mandamus, however, cannot control discretion lawfully vested in the official functions of a state official. *See Territory ex rel. Castillo v. Perea*, 1900-NMSC-026, ¶ 12, 10 N.M. 362, 62 P. 1094 ("It is not the province of a writ of mandamus to control the discretion of an officer where a discretion is vested in him."); *see also Mimbres Valley Irrigation Co. v. Salopek*, 2006-NMCA-093, ¶ 11, 140 N.M. 168, 140 P.3d 1117 ("The writ applies only to ministerial duties and it will not lie when the matter has been entrusted to the judgment or discretion of the public officer.").

**{15}**   This Court has emphasized that mandamus is particularly appropriate "where a petitioner [seeks] to restrain one branch of government from unduly encroaching or interfering with the authority of another branch in violation of Article III, Section 1 of our state constitution." *State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶ 11, 127 N.M. 272, 980 P.2d 55. In *Sandel*, we articulated that this Court's exercise of mandamus authority is proper when:

> the petitioner presents a purely legal issue concerning the non-discretionary duty of a government official that (1) implicates fundamental constitutional questions of great public importance, (2) can be answered on the basis of virtually undisputed facts, and (3) calls for an expeditious resolution that cannot be obtained through other channels such as direct appeal.

*Id.*

**{16}**   Applying *Sandel*'s standards to the case at hand, we determine that this matter is properly before us. The threshold point to address is whether Petitioners have "present[ed] a purely legal issue concerning the non-discretionary duty of a government official." *Id.* As we discuss herein, the Commission did not have the authority to initiate proceedings for abandonment of San Juan, and as a matter of law, proceedings began after the ETA became effective. Clear constitutional and statutory delineations instruct that the Commission has a nondiscretionary duty to administer applicable law duly enacted by our Legislature. N.M. Const. art. XI, § 2 (mandating that the Commission shall have responsibilities that conform "in such manner as the legislature shall provide"); NMSA 1978, § 62-6-4 (2003) (declaring that the Commission has "power and jurisdiction to regulate . . . in accordance with the provision and subject to the reservations of the Public Utility Act"); *United Water N.M., Inc. v. N.M. Pub. Util.*

*Comm'n*, 1996-NMSC-007, ¶ 19, 121 N.M. 272, 910 P.2d 906 ("[T]he [Commission's] power over public utilities reaches no farther than what is statutorily authorized."); *City of Sunland Park v. N.M. Pub. Regulation Comm'n*, 2004-NMCA-024, ¶ 19, 135 N.M. 143, 85 P.3d 267 ("The [Commission] is a creature of statute that derives its authority and jurisdiction from the New Mexico Public Utility Act."). Accordingly, this matter concerns a purely legal question whether the Commission followed its nondiscretionary duty of applying the ETA to San Juan abandonment proceedings.

**{17}** Having determined the instant case is a legally driven, nondiscretionary matter, we apply *Sandel*'s three criteria. First, this matter implicates matters of great constitutional importance because the Commission's actions ultimately invade legislative authority, thus violating provisions of the New Mexico Constitution. Specifically, the Commission indicated that it might not apply the ETA to San Juan abandonment proceedings. The Commission lacks the authority to make such a discretionary decision. To the contrary, the Commission is constitutionally obligated to regulate public utilities "in such manner as the legislature shall provide." N.M. Const. art. XI, § 2. Allowing the Commission the discretion to select which statutory scheme does or does not apply would impermissibly invade the province of the Legislature, thus violating the carefully balanced separation of powers established by our state constitution. *See* N.M. Const. art. III, § 1.

**{18}** Second, the parties do not dispute the factual record in this matter, which not only meets the second criterion of *Sandel*, but also buttresses our conclusion that the matter before us is a purely legal one. Third, briefing in this matter has demonstrated irreversible harm likely to occur to the economies of New Mexico and the Navajo Nation caused by the Commission's equivocation on application of the ETA to abandonment proceedings for San Juan Units One and Four. Briefing has also illuminated the need for immediate clarification of applicable law in order to efficiently proceed with abandonment of San Juan. We are persuaded by the briefing that these factors establish the need for expeditious resolution and satisfy the third prong of *Sandel*.

**{19}** Guided by *Sandel*, we conclude mandamus is the appropriate remedy in this matter to restrain the Commission from encroaching upon the authority of the Legislature. We exercise our mandamus jurisdiction and proceed to our reasons for compelling the Commission to apply the ETA to San Juan abandonment proceedings.

### III.  THE COMMISSION HAS A NONDISCRETIONARY DUTY TO APPLY THE ETA

**{20}** The pivotal question is whether abandonment of San Juan Units One and Four was a pending case prior to the enactment of the ETA. We conclude that it was not. The Commission argues that application of the ETA to San Juan abandonment proceedings is precluded by Article IV, Section 34 of the New Mexico Constitution. Article IV, Section 34 provides: "No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." The intent of this constitutional provision "is to prevent legislative interference with matters of evidence and procedure in cases that are in the process or course of litigation in the various courts of the state[.]" *Stockard v. Hamilton*, 1919-NMSC-018, ¶ 9, 25 N.M. 240, 180 P.

294. A lawfully commenced proceeding before an administrative tribunal is a "pending case." *See In re Held Orders of U S West Commc'ns, Inc.*, 1999-NMSC-024, ¶ 13, 127 N.M. 375, 981 P.2d 789.

**{21}** The Commission specifically contends that the Commission's initiation of abandonment proceedings in January 2019 marked the beginning of San Juan abandonment proceedings, thus constituting a "pending case" within the meaning of Article IV, Section 34. According to the Commission, abandonment proceedings were therefore initiated before the ETA's June 2019 effective date, and application of the ETA would violate Article IV, Section 34.

**{22}** The linchpin of the Commission's argument—that the Commission's initiation of abandonment proceedings marked the beginning of a valid "pending case" within the meaning of Article IV, Section 34—presupposes that the Commission has the authority to compel a public utility to file an abandonment application. Thus, the key question in this matter is whether the Commission does have the authority to initiate an abandonment proceeding. We hold that the Commission does not. As a matter of law, abandonment proceedings for San Juan Units One and Four did not effectively begin until PNM filed its application for abandonment. As the ETA was in effect at the time of PNM's application, the Commission has a nondiscretionary duty to apply the ETA to San Juan abandonment proceedings.

## A.      The Commission Did Not Have the Authority to Compel PNM to File an Application for Abandonment

**{23}** The Commission asserts two bases for initiating the January 2019 Docket. First, the Commission states that Section 62-9-5 grants the Commission the authority to initiate an abandonment proceeding. Second, the Commission claims that compelling PNM to file an abandonment application was necessary to ensure compliance with the requirements of Paragraph 19. We address each argument in turn.

**{24}** Section 62-9-5 governs the process in which a public utility may abandon a facility. Section 62-9-5 provides, in pertinent part, "No utility shall abandon all or any portion of its facilities subject to the jurisdiction of the commission, or any service rendered by means of such facilities, without first obtaining the permission and approval of the commission." The Commission interprets Section 62-9-5 as granting it the authority to initiate an abandonment proceeding and the authority to compel a public utility to file an application for abandonment.

**{25}** This Court has previously confronted the Commission's authority under Section 62-9-5 in *United Water*, 1996-NMSC-007.[2] In that case, the Commission argued that

---

2 We note that Section 62-9-5 was amended in 2005, nine years after *United Water* was published. The 2005 amendment added additional language to the statute directing the Commission to consider the impact that an abandonment of service will have on customers. *See* § 62-9-5, compiler's note to the 2005 amendment. The 2005 amendment did not alter the language of the statute considered by *United Water* and did not amend any provisions of the statute that are material to the case at hand. *Compare* § 62-9-5 (2005) *with* NMSA 1978, § 62-9-5 (1983). As such, we see no reason to discount *United Water*'s

Section 62-9-5 required a public utility to gain the Commission's approval for abandonment before a condemnation proceeding could occur. *Id.* ¶ 11. We concluded that the plain language reading of Section 62-9-5 "logically referr[ed] *only to voluntary actions by a public utility.*" *Id.* ¶ 16 (emphasis added). In other words, Section 62-9-5 could "most reasonably [be] read as applying only to voluntary or intentional acts of a public utility." *Id.* ¶ 18. We held the Commission's abandonment authority could not extend to condemnation proceedings because those proceedings were not voluntary acts but rather government-compelled condemnation. *Id.* ¶¶ 18-19. We underpinned our holding by stating the Commission's authority under Section 62-9-5 was "limited to granting or denying the public utility's request for abandonment." *Id.*

**{26}** *United Water* informs that, under Section 62-9-5, abandonment proceedings can only begin with a public utility's *voluntary* request for abandonment. At this point—after a public utility requests abandonment—the Commission is vested with the statutory authority to grant or deny an application for abandonment. A plain language reading of Section 62-9-5 neither expressly establishes nor implies that the Commission has the authority to order a public utility to begin abandonment proceedings. *Cf. Burroughs v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 1975-NMSC-051, ¶ 14, 88 N.M. 303, 540 P.2d 233 (stating that this Court "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written"). To interpret the statute otherwise would read into the statute a considerable amount of authority that the Legislature did not provide. *See Blancett v. Dial Oil Co.*, 2008-NMSC-011, ¶ 11, 143 N.M. 368, 176 P.3d 1100 ("When a statute's meaning is clear from its plain language, we must apply the statute as written by the Legislature."); *Sandel*, 1999-NMSC-019, ¶ 17 (stating that while the Commission's administration of a statute is afforded some deference, the Commission does not have "the authority to pour any meaning it desires into the statute" (internal quotation marks and citation omitted)). The Commission has the general authority to hold hearings "as may be required in the administration of the powers and duties conferred upon it by [statute]," NMSA 1978, § 62-10-2 (1941), but no statute grants the Commission authority to compel a public utility to file an abandonment application.

**{27}** The Commission also asserts that Paragraph 19 necessitated the Commission's initiation of abandonment proceedings because PNM had taken concrete steps to abandon San Juan. Indeed, PNM stated in its December 31, 2018, compliance filing that it would not be extending operation of San Juan past 2022 and that it planned to file an abandonment application in the second quarter of 2019. We appreciate the Commission's commitment to guarding public interest and ensuring proper safeguards in the course of abandonment of a public utility. While those interests are sound, we nevertheless reiterate that the Legislature has not conferred upon the Commission the authority to initiate an abandonment proceeding as an avenue to ensure compliance with Commission directives.

---

interpretation of Section 62-9-5. *Cf. Aguilera v. Bd. of Educ. of Hatch Valley Schools*, 2006-NMSC-015, ¶ 19, 139 N.M. 330, 132 P.3d 587 (stating that an amendment to a statute does not necessarily alter the existing understanding of the statute).

**{28}** That is not to say the Commission is devoid of means to prevent a public utility from undermining its authority. NMSA 1978, Section 62-12-1 (1941) explicitly provides the Commission with a process to prevent violation of Commission orders. Section 62-12-1 specifies that:

> Whenever the commission shall be of the opinion that any person or utility is failing . . . to do anything required of it by this act or by any order of the commission, or is doing anything or about to do anything . . . contrary to or in violation of this act or of any order of the commission, it may direct the attorney general of New Mexico to commence an action or proceeding in the district court . . . for the purpose of having such violations or threatened violations stopped and prevented either by mandamus or injunction.

**{29}** Section 62-12-1 outlines an enforcement mechanism significantly different than the actions taken by the Commission in this case. If the Commission was of the opinion that PNM was violating Paragraph 19, or any Commission directive, then the appropriate procedure would have been to request the Attorney General to seek an injunction from the district court compelling PNM to file an application for abandonment. *See* § 62-12-1. The course of action to enforce Commission orders is clear; initiation of abandonment proceedings was not the proper means to prevent perceived violations of Paragraph 19.

**{30}** We hold the Commission does not have the authority to initiate an abandonment proceeding. Section 62-9-5 does not allow the Commission to compel a public utility to file for abandonment. Enforcement of Commission orders is prescribed by Section 62-12-1. Because the Commission lacks the authority to initiate an abandonment proceeding, we vacate the Abandonment Order. *See El Paso Elec. Co. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-048, ¶ 6, 149 N.M. 174, 246 P.3d 443 ("We vacate and annul a Commission order as unreasonable or unlawful if the Commission wrongfully exerted jurisdiction over a case." (internal quotation marks and citation omitted)).

**B.** **Because the ETA Applies as a Matter of Law, the Commission's Equivocation to Apply the ETA Violates Article III, Section 1 of the New Mexico Constitution**

**{31}** Having established that the Commission lacks the authority to initiate an abandonment proceeding, we can discern that abandonment proceedings for San Juan Units One and Four effectively began when PNM filed its consolidated application for abandonment on July 1, 2019. *See* § 62-9-5 (providing that abandonment proceedings can be triggered by a utility's "proposed abandonment of service"). The effective date of the ETA—June 14, 2019—predates PNM's application and is therefore applicable to San Juan abandonment proceedings as a matter of law. *See, e.g.*, *Hillelson v. Republic Ins. Co.*, 1981-NMSC-048, ¶ 11, 96 N.M. 36, 627 P.2d 878 (holding that effective law at the time of a case's initiation is the controlling law of that case). As PNM's filing occurred after the ETA was in effect, we are not persuaded by the Commission's

argument that Article IV, Section 34 bars application of the ETA. While the Commission's constitutional argument is inapposite, this case nevertheless implicates another provision of the New Mexico Constitution——Article III, Section 1.

**{32}** A violation of the separation of powers doctrine occurs when an administrative body "conflict[s] with or infringe[s] upon what is the essence of legislative authority—the making of law." *State ex rel. Clark v. Johnson*, 1995-NMSC-048, ¶ 33, 120 N.M. 562, 904 P.2d 11. We have previously stated that "conflict or infringement occurs when an administrative agency goes beyond the existing New Mexico statutes or case law it is charged with administering and claims the authority to modify this existing law or to create new law on its own." *Sandel*, 1999-NMSC-019, ¶ 12. The Commission's authority goes no further than what has been statutorily authorized. *See El Paso Elec.*, 2010-NMSC-048, ¶ 6 ("The Commission, though a constitutionally created body, N.M. Const. art. XI, § 1, may exercise only its statutorily authorized jurisdiction.").

**{33}** The Commission has a constitutional duty to regulate public utilities "in such manner as the legislature shall provide." N.M. Const. art. XI, § 2. In the instant case, the ETA serves as the statutory scheme that the Legislature provided for abandonment proceedings. The Commission therefore had a nondiscretionary obligation to apply the ETA to the San Juan abandonment proceedings. Equivocation by the Commission as to the ETA's applicability indicated that the Commission potentially intended to modify or ignore applicable law, in violation of Article III, Section 1 of the New Mexico Constitution. That is not within the discretion of the Commission and is instead a function of our Legislature. Allowing the Commission such discretion would permit the Commission's infringement "upon what is the essence of legislative authority—the making of law." *Clark*, 1995-NMSC-048, ¶ 33.

## IV. CONCLUSION

**{34}** For the foregoing reasons, we granted Petitioners' petition for writ of mandamus.

**{35} IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**

**RAYMOND Z. ORTIZ, Judge, Retired**
**Sitting by designation**