### FREEMAN, Trustee, *v.* DAWSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TENNESSEE.

Argued January 16th, 1884.—Decided January 28th, 1884.

*Execution—Judgment—Jurisdiction.*

From a decree of the Circuit Court, awarding a fund of $6,000 to one claiming under a distinct title, the grantee in a deed of trust to secure debts to various other persons, exceeding that amount in all, but of less than $5,000 each, may appeal to this court.

A judgment duly recovered is not affected, nor the right to take out execution upon it impaired, by an application made to the court to set it aside, and "continued until the next term, without prejudice to either party."

All the proceedings under a levy of execution have relation back to the time of the seizure of the property.

A levy of execution, for a debt of the lessee, upon the leasehold estate, and upon a cotton press, with its engine, boilers and machinery, erected by him, under which the officer has seized the property, and given due notice of a sale thereof, is not defeated by an order from the clerk, under seal of the court, pursuant to a direction of the judge in vacation, without notice to the judgment creditor, requesting the officer to return the execution unexecuted; nor by the officer's, upon receiving such order, ceasing to keep actual possession of the property, and returning the execution, with his doings indorsed thereon, to the court, for further directions.

*Mr. C. W. Metcalf* for appellant.

*Mr. W. K. Poston* for appellee.

MR. JUSTICE GRAY delivered the opinion of the court.

This is an appeal by the grantee in a deed of trust, from a decree of the Circuit Court of the United States for the West-

ern District of Tennessee, in favor of a judgment creditor of the grantor.

The undisputed facts of the case, as shown by the pleadings and the documentary evidence, are as follows:

In January, 1878, the owners of two lots of land in the city of Memphis, county of Shelby and State of Tennessee, executed to R. C. Daniel a lease thereof for the term of six years, at a certain rent, and with a provision that any improvements or machinery made or erected by the lessee might be removed by him at the end of the lease. Steers and Morse, under a contract with Daniel, erected upon the land a cotton press, engine, boilers, and machinery; and on August 8th, 1878, filed the original bill in this case against him, in the Chancery Court of Shelby County, to enforce a mechanic's lien, under the statutes of Tennessee, upon his leasehold interest in the land, and upon his interest in the press and machinery, and obtained a writ of attachment against the same.

On June 6th, 1878, A. H. H. Dawson duly recovered against Daniel two judgments at law, upon default, in the Circuit Court of the United States, amounting together to the sum of $5,629.91. At the same term, on June 13th, an application was made by Daniel to vacate each of those judgments, and was " continued until the next term of the court, without prejudice to either party." On July 5th writs of *fieri facias* upon both the judgments were issued by the clerk and delivered to the marshal. On July 9th the marshal, as appears by his indorsement thereon, levied each of these executions upon Daniel's interest in the land (particularly described) and upon all his interest " in and to the chattel property in, about and upon the foregoing described lots and parcels of land, consisting of a Morse improved Tyler cotton compress, with engines, boilers, machinery, &c., with all appurtenances thereto belonging;" and afterwards published and posted, and served upon Daniel, as required by law, notices of a sale to be made on August 8th in pursuance of the levy.

On August 5th the Circuit Judge sent to the clerk the following letter:

"Knoxville, Tennessee, August 5th, 1878.

"My Dear Sir : I have been furnished by Messrs. Gantt & Patterson, attorneys for Mr. R. C. Daniel, with certified copies of the record in the suits of A. H. H. Dawson v. Daniel, pending in your court. From this, as I construe it, judgments by default were rendered at the last term, and then an application made to set aside said judgments and permit defendant to plead, which application was continued to next term of the court. This leaves these cases pending undetermined. Yet Messrs. Gantt & Patterson, for their client, represent that executions have been issued and levied on Daniel's property. If this is so, the executions are without authority, and ought to be called in as improvidently issued. There is no final judgment on which they can rest. My suggestion is that you issue a paper to the marshal reciting the fact that executions were issued without authority, and request him to return the same unexecuted.

"I am, very truly, &c.          JNO. BAXTER

"Bell W. Etheridge, Esq.,

"U. S. Circuit Court, Memphis, Tenn."

On August 7th the clerk delivered to the marshal a paper headed "Circuit Court of the United States for the Western District of Tennessee," with the names of the cases and their numbers on the docket, and the rest of which was as follows :

"To the United States Marshal, Western District of Tennessee :

"In accordance with the instructions of Judge Baxter, communicated by letter, a copy of which is hereto attached, I notify you that the executions in the two above named cases were issued without authority, and request you to return the same unexecuted. You will therefore act accordingly.

"Witness my signature and the seal of said court, this the seventh day of August, 1878.

[SEAL.]          "BELL W. ETHERIDGE, Clerk."

The marshal's return upon each execution, after stating the levy and notice, concluded as follows :

"And on 17th August, 1878, in obedience to an order of court issued by Hon. John Baxter, I return this writ without further proceedings."

The coroner of Shelby County thereupon, on the same day, took possession of the property under the writ of attachment issued upon the bill in equity of Steers and Morse.

On November 22d, Daniel executed a deed, which was recorded on the next day, of his interest in the leasehold, and in the cotton press with its engine, boiler, machinery and appurtenances, to John J. Freeman, in trust to secure, and to sell for the payment of, debts due from Daniel to various persons, in sums of $6,000, or less, and amounting in all to the sum of $18,370, for moneys borrowed by Daniel to pay for the leasehold and fixtures.

The Circuit Court, at a regular term, on January 6th, 1879, denied the applications of Daniel to vacate the judgments at law, and on February 8th granted motions of Dawson for writs of *venditioni exponas.* On February 10th such writs were issued accordingly, which recited that "said writs. of *fieri facias* have been returned without any sale of the property levied on as aforesaid, which levies this court now adjudges as still in full force, and unabandoned by the marshal, and the property so levied on is still in his possession by virtue of said levies." The opinions delivered on the applications and motions are reported in *Dawson* v. *Daniel*, 2 Flippin, 301, 305.

The returns subsequently made by the marshal upon the writs of *venditioni exponas* show that, upon receiving them, he went upon the land, and found the cotton press being operated by, and under the control of, Charles Yerger, who claimed to be in possession, in behalf of the sheriff and coroner, under an order of the Chancery Court of Shelby County; that he exhibited his writs of *venditioni exponas*, and demanded of Yerger possession of the property, which was refused; that he was thereupon directed by the attorneys for Dawson to proceed under those writs to a sale of the property, and gave notice to Daniel of such a sale to take place on March 11th; and that on February 12th those attorneys "directed that all proceedings hereunder be suspended until further orders in the premises."

On February 13th Steers and Morse filed in the suit in equity an amended and supplemental bill against Dawson, Freeman,

trustee, and the beneficiaries under the trust deed; and on February 15th removed that suit into the Circuit Court of the United States, and there moved for a temporary injunction to restrain Dawson and the marshal from further proceeding against the property under the judgments and executions at law. On March 18th that court issued such an injunction, and ordered, with the consent of all the parties, "that the custody and possession by the marshal of said property shall remain as it is undisturbed, and that for the preservation of the property he may employ a day and night watchman for the same, but without in any manner affecting the rights or claim of any party hereto; and nothing herein contained shall be held in any manner to affect or release any lien that the defendant Dawson claims to have acquired under his said judgments, executions and liens."

On June 2d the marshal returned the writs of *venditioni exponas*, "without further proceedings."

On June 13th, 1879, after answers filed by Dawson, and answers and cross-bills filed by Freeman and the beneficiaries under the trust deed, the suit in equity came to a final hearing in the Circuit Court, and a decree was entered, by consent, ordering and confirming a sale of the leasehold, and of the press and machinery, establishing the priority of the lien of Steers and Morse, and applying to the satisfaction of that lien, and to the payment of the accrued rent and taxes, the proceeds of the sale, except the sum of $6,000, which was reserved to abide the result of the litigation between Dawson and Freeman. And on July 28th, 1880, a final decree was entered, affirming the validity of the judgments and executions, and awarding the fund of $6,000 to Dawson. The opinion is reported in *Steers* v. *Daniel*, 2 Flippin, 310. Freeman thereupon appealed to this court.

By the marshal's deposition, and the weight of the whole evidence, the other material facts in the case appear to be as follows: The marshal, on July 9th, 1878, at the time of levying the executions issued upon the judgments at law, and, with the consent and at the expense of Dawson's attorneys, put a watchman in possession of the premises to protect the property

against fire and depredation; and on August 8th showed the letter of the Circuit Judge, and the paper received from the clerk, to Dawson's attorneys, and was told by them that actual possession was not required by law to maintain the levies, and thereupon by their direction withdrew the watchman, knowing that the coroner was about to levy the attachment granted by the State court on the bill in equity of Steers and Morse; and the marshal did not afterwards retain possession in fact of the property. But he did not intend to abandon the levies; and he suspended further proceedings merely in obedience to the order received from the clerk, and for the purpose of submitting to the court the question of the validity of the executions and levies.

The appellee has moved to dismiss the appeal, for want of a sufficient amount in controversy to sustain the jurisdiction of this court. The reason assigned for the motion is, that if the appellant's position is maintained, no one of the creditors secured by the trust deed will receive so much as $5,000 out of the fund of $6,000 in court. But it is admitted that the whole amount of debts secured by the deed of trust exceeds that fund; the sole question at issue on this appeal is of the legal title to the whole fund, as between Dawson, the judgment creditor, on the one hand, and Freeman, the grantee in the deed of trust, on the other; and no question of payment to or distribution among the several *cestuis que trust* is presented. The motion to dismiss must therefore be overruled. *Ex parte Baltimore & Ohio Railroad Co.*, 106 U. S. 5, and cases there cited.

Upon the merits, the priority of the mechanic's lien having been established by the Circuit Court with the consent of the parties, the single question is whether the title of Dawson, under the judgments rendered against Daniel and the executions levied on the property, is to be preferred to the title of Freeman under the deed of trust to him from the judgment debtor.

The judgments were duly recovered. The filing of applications to set them aside did not affect the validity of the judgments, nor suspend the right to take out executions thereon. The continuance of those applications to the next term, " with-

out prejudice to either party," left both parties in *statu quo*, the applications of the judgment debtor to set aside the judgments undetermined, and the right of the judgment creditor to enforce the judgments unaffected.

The levies were duly made by the marshal, and indorsed by him on the executions. The law of Tennessee, following the rule established in the colonies by the English statute of 5 Geo. II., ch. 7, § 4, authorizes real estate, as well as personal property, to be levied upon and sold under a writ of *fieri facias*. Code of Tennessee, § 2999; *Russell* v. *Stinson*, 3 Haywood, 1; *Pillow* v. *Love*, 5 Haywood, 109.

The action of the Circuit Judge in directing the recall of the executions in vacation, out of court, without notice to the judgment creditor, was irregular and unauthorized, and of no legal validity. The levy of an execution takes effect from the time when it is made by seizing the property, and is not defeated by a subsequent writ of *supersedeas*, but all the proceedings, by sale or otherwise, in the due course and completion of the levy, for collecting the debt out of the property, have relation back to the time of the seizure. *Boyle* v. *Zacharie*, 6 Pet. 648, 659; *United States* v. *Dashiel*, 3 Wall. 688; *Batdorff* v. *Focht*, 44 Penn. St. 195; *Bond* v. *Willett*, 31 N. Y. 102; *Capen* v. *Doty*, 13 Allen, 262.

By the common law, a leasehold interest in land is personal property. Trade fixtures put up by the lessee, although real estate as between the lessor and himself, while annexed to the land, yet may, during the term of the lease, be severed by the lessee, or by one deriving title from him, and thus reconverted to their original condition of chattels. At any time before the expiration of the term, therefore, both the leasehold and the fixtures may be taken on execution against the lessee, like other personal property. *Dalzell* v. *Lynch*, 4 W. & S. 255; *Kutter* v. *Smith*, 2 Wall. 491; *Van Ness* v. *Pacard*, 2 Pet. 137; *Minshall* v. *Lloyd*, 2 M. & W. 450; *Guthrie* v. *Jones*, 108 Mass. 191.

It is argued for the appellee that by the law of Tennessee the rule is different as to both leasehold and fixtures, or at least as to the leasehold. But we have not found it necessary, for

the purposes of this case, to decide whether by the local law the leasehold and fixtures, or either of them, should be treated as real estate, or as personal property, in levying an execution on them for the debt of the lessee.

If, as the appellee contends, the property levied on should be considered as real estate, the judgments, having been recovered in the county in which the debtor resided, created a lien from the time they were rendered, which was continued in force by the taking out of the executions and the sale of the property within a year after the rendition of the judgments. Code of Tennessee, §§ 2980, 2982.

If, as the appellant contends, the leasehold and fixtures were personal property, the case stands thus :

The leasehold interest, though personal property, is an interest in land. The lessee's interest in the fixtures arises out of the agreement contained in the lease, and of the manner and purpose of their annexation to the land, from which they could not be separated and removed without much labor and expense. It was not necessary that the officer should retain actual possession in order to keep alive a levy upon such property. *Ashmun* v. *Williams*, 8 Pick. 402.

The executions have never been legally recalled or set aside. The officer, in deference to the supposed order of the court staying the executions, suspended further proceedings for the conversion of the property into money to satisfy the judgment debts, and returned the executions to the court with indorsements showing all the proceedings under them, thereby submitting the regularity of his proceedings and the validity of the levies to the judgment of the court ; and it was after this return that the property was taken possession of by the coroner, under the writ of attachment from the State court, and was conveyed by the judgment debtor to the appellant.

The possession so taken by the coroner, and the conveyance so made by the debtor, cannot impair the validity of the levies. The judgment creditor and the marshal had done everything in their power to perfect them. All the proceedings of the marshal had been indorsed by him on the executions and returned to the court, and thus appeared of record. The levies

having been once duly made, and never abandoned or intended to be abandoned, and not needing a continuance of actual possession by the marshal to maintain them, had not been defeated by any extrinsic facts. And the court, upon motion and hearing, determined that the levies continued in force, and ordered writs of *venditioni exponas* to issue.

The marshal was prevented from taking possession of and selling the property under those writs by the fact of its being in possession of the officer of the State court, under the attachment issued in the present suit to enforce the mechanic's lien. But by the removal of this suit into the Circuit Court of the United States all danger of conflict between the federal process and State process was avoided; and the Circuit Court, having all the parties and all the processes before it, rightly held that the levies of the executions upon the judgments at law continued in force, and gave the judgment creditor a priority over the grantee of the judgment debtor.

*Decree affirmed.*