**SECURE ENGINEERING SERVICES, LTD., et al., Plaintiffs,**

v.

**INTERNATIONAL TECHNOLOGY CORPORATION, et al., Defendants.**

**Civ. A. No. 89–0003–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Dec. 12, 1989.

John W. Griggs, Birch, Horton, Bittner, Cherot & Anderson, P.C., Washington, D.C., Stephen R. Holt, Arent, Fox, Kintner, Plotkins and Kahn (local counsel), Vienna, Va., for plaintiffs.

Peter K. Stackhouse, Sarah L. Stewart, Walsh, Colucci, Stackhouse, Emrich & Lubeley, P.C., Arlington, Va., for defendants.

---

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the court on the defendants' Motion for a Stay of Judgment Pending Appeal. During proceedings on this motion, a difficult issue arose concerning what effect the posting of a supersedeas bond would have on an antecedent levy executed against the property of the defendant/judgment debtor. This opinion addresses the question of whether the issuance of a stay pending appeal operates retroactively to dissolve a garnishment which was served after judgment but before the grant of the stay.

The case arose out of a contractual relationship between the plaintiff, Secured Engineering Services, Ltd. ("Secure") and the defendant, International Technology Corporation ("ITC"). Under the terms of this contract, Secure was given the exclusive right to market and sell products of ITC in Western Europe. The market for ITC products is limited primarily to the military and defense ministries of countries which are members of the North Atlantic Treaty Organization ("NATO").

Pursuant to its agreement with ITC, Secure concentrated its marketing efforts with NATO agencies in West Germany, Italy, Belgium and the Netherlands. In mid–1988, Secure landed a major contract with SHAPE Technical Centre, a NATO agency, and advised ITC that it expected to win orders for hundreds of ITC machines in late 1988 and beyond.

In May of 1988, Secure hired defendant Ken Mullins to assist in preparing bids for the sale of ITC equipment. During his employment, Mr. Mullins learned Secure's bidding strategy, worked on its bidding process, and gained access to confidential information about expected future contracts. Mr. Mullins became one of only three or four people directly involved in the strategic decision-making at Secure.

In August of 1988, Secure entered a Basic Ordering Agreement ("BOA") with SHAPE Technical Centre. This BOA permitted all NATO agencies to order from a menu of ITC computers and other items in unlimited quantities without going through competitive bidding procedures for each purchase.

On November 4, 1988, Mr. Mullins was approached by ITC president Don Iverson about working for ITC in Europe and selling ITC equipment directly to NATO agencies. Mr. Iverson also informed Mr. Mullins that ITC intended to terminate its contract with Secure. Mr. Mullins accepted a position with ITC on November 8, 1988.

Rather than immediately informing Secure that he had accepted employment with ITC, Mr. Mullins continued to draw compensation from Secure while performing work for ITC. Mr. Mullins leased space for ITC's new European office, set up ITC's new facility, attempted to hire one of Secure's sales representatives, and provided ITC with information regarding NATO's computer procurements. On November 15, 1988, Mr. Mullins tendered his resignation with Secure. He still failed, however, to inform them that he was going to work for ITC, that he intended to compete directly with Secure, or that he knew ITC intended to terminate its contract with Secure.

Secure received ITC's notice of contract termination on November 23, 1988. The sole reason given for terminating the contract was Secure's use of other companies as agents to market ITC products. Under the terms of the contract, ITC was required to allow Secure 90 days to cure any alleged material breach of the contract. ITC failed to allow Secure this cure period. In fact, ITC bid on and won three major contracts in direct competition with Secure during the 90 day period. In each case, ITC offered its computers at prices below the wholesale price at which it had previously supplied its products to Secure.

On January 3, 1989, Secure filed a complaint in this court claiming breach of fiduciary duty, tortious interference with a business expectancy, breach of contract, and statutory conspiracy pursuant to Virginia Code § 18.2–499. On July 27, 1989, a jury in this court found as follows:

(i) As to the claim of breach of fiduciary duty, the jury found in favor of the plaintiffs and awarded them $5,000.00 in com-

pensatory damages and $30,000.00 in punitive damages.

(ii) As to the claim of tortious interference with a business expectancy, the jury found in favor of the plaintiffs and awarded $300,000.00 in compensatory damages and $350,000.00 in punitive damages.

(iii) As to the breach of contract claim, the jury found in favor of the plaintiff and awarded $150,750.00.

(iv) As to the counter-claim of ITC, the jury found in favor of the defendant in the amount of $10,208.00. The jury also found in favor of the defendants on the plaintiffs' claim of statutory conspiracy.

The aggregate sum of damages awarded the plaintiffs by the jury totaled $825,542.00. On September 1, 1989, this court heard post-trial motions and granted a Judgment N.O.V. on the plaintiffs' breach of contract claim, thereby reducing the overall award by $150,750.00. The defendants' post-trial motions regarding the tortious interference claim and the breach of fiduciary duty claim were denied. In response to these denials, the defendants filed a Notice of Appeal to the Fourth Circuit Court of Appeals on September 25, 1989.

Plaintiffs commenced execution of the judgment on September 8, 1989, through service of garnishments on ITC for any property owned by defendant Ken Mullins and on Sovran Bank for any property owned by ITC. These garnishments were served on September 27, 1989, and had return dates of October 27, 1989. On October 3, 1989, the defendants filed with this court a Motion to Stay Judgment Pending Appeal pursuant to Fed.R.App.P. 8(a), Fed.R.Civ.P. 62(d) and Rule 15 of the Local Rules of Practice for the Eastern District of Virginia.

In accordance with their motion for a stay, the defendants stated they would file a supersedeas bond subject to court approval in order to stay the execution of judgment pending the outcome of their appeal. The parties represented to the court that they had discussed the amount and form of the bond and had agreed that a supersedeas bond could be posted by the defendants to stay execution of the judgment pending appeal. The only issue on which the parties disagreed, and the sole issue which the court will address in this opinion, is whether posting of the supersedeas bond would result in the dismissal of the garnishment summons and stay any execution of the judgment initiated prior to the bond's posting.

On October 6, 1989, after hearing argument on the defendants' Motion for a Stay Pending Appeal, the court entered an Order allowing the defendants to post supersedeas bond in the amount of $680,000.00. The bond could take the form of a surety bond, a letter of credit, or cash posted with the Clerk of the Court. The effect this bond would have on the plaintiffs' prior garnishment summons was taken under advisement by the court.

In order to put this case in perspective, the nature of a garnishment must be examined.

> [A garnishment] proceeding must be regarded as a civil suit, and not a process of execution to enforce a judgment already rendered. In this proceeding the parties have a day in court; an issue of fact may be tried by a jury; evidence adduced, judgment rendered, costs adjudged, and execution issued on the judgment (citations omitted).

*Levine's Loan Office v. Starke*, 140 Va. 712, 125 S.E. 683, 684 (1924).

> In the case of garnishment, it retains its character as one in the nature of a proceeding in rem, although there is no actual seizure of property under the order of attachment, for by service of the order upon the garnishee it arrests the debt in his hands, and holds it through him, subject to the judgment of the court.... Jurisdiction of the person of the garnishee must be acquired by service upon him, but this does not necessarily give jurisdiction of the res or debt owing by him, which belongs to the defendant, whose right to it must be extinguished by bringing it within the jurisdiction of the court by proper proceedings, and

subjecting it to the satisfaction of the plaintiff's demand by a proper judgment. *Pennsylvania R. Co. v. Rogers*, 52 W.Va. 450, 44 S.E. 300, 302 (1903).

Rule 62(a) of the Fed.R.Civ.P. provides for a ten day stay of judgment before an execution can issue. Rule 62(d) permits the defendants to obtain a stay upon the posting of a supersedeas bond approved by the court. Rule 62(f) states as follows:

*Stay According to State Law.* In any state in which a judgment is a lien upon the property of the judgment debtor and in which the judgment debtor is entitled to a stay of execution, a judgment debtor is entitled, in the district court held therein, to such stay as would be accorded the judgment debtor had the action been maintained in the courts of that state.

Section 8.01–501, *et seq.*, of the Virginia Code (as amended), which sets forth the procedure for institution of a garnishment proceeding, contains no provision retroactively staying execution of a garnishment upon the posting of a supersedeas bond. In this case, therefore, Rule 62(f) does not incorporate any state statutes which would expand the period of stay beyond that permitted by Rule 62(d). Rule 62(d), however, does not explicitly address what effect, if any, the posting of a supersedeas bond would have on execution proceedings begun prior to the posting of such bond.

Case authorities addressing the retroactive effect of a supersedeas bond are in conflict. The defendants rely on *Ascher v. Gutierrez*, 66 F.R.D. 548 (D.D.C.1975), to support their position that the filing of a satisfactory supersedeas bond operates to preserve the status quo and to stay further proceedings even where there has been an antecedent levy on the property of the judgment debtor.

This holding is contrary to the generally prevailing rule at common law as recognized by the Supreme Court in *Freeman Trustee v. Dawson*, 110 U.S. 264, 270, 4 S.Ct. 94, 98, 28 L.Ed. 141 (1884):

The levy of an execution takes effect from the time when it is made by seizing the property, and is not defeated by a subsequent writ of supersedeas....

This common law rule is based on the theory that a proceeding for enforcement of a judgment by an execution is entire and indivisible, so that when commenced by a levy on property it must continue without interruption until completed. Accordingly, a subsequently filed supersedeas bond cannot reach a previously made levy on property. 90 A.L.R.2d 483 (1963).

The common law rule has been widely abrogated in many states by legislative action. 4 Am Jur 2d, Appeal and Error § 372. As noted, however, no controlling statute is in effect within this court's jurisdiction, and, while the legislative trend may be away from the common law rule, a contrary trend can be found in recent cases arising in jurisdictions where, as here, no statute controls. For example, in *Imperial Commodities Corp. v. S.S. Maria Auxiliadora*, 115 F.R.D. 305 (S.D.N.Y.1987), the court held that a levy upon the funds of a defendant, obtained pursuant to a writ of execution, could not be vacated by a subsequently filed supersedeas bond. *Citing,* J. Moore, *7 Moore's Federal Practice*, ¶ 62.06 (1985). The *Imperial* case distinguished *Ascher* on the grounds that the motion granted in *Ascher* was submitted by an intervenor surety company. Whereas potential detriment to a third party was at issue in *Ascher*, no such interests were at stake in *Imperial.*

The *Imperial* decision was followed in *Larry Santos Products v. Joss Organization*, 682 F.Supp. 905 (E.D.Mich.1988). In the *Joss* case, the court ruled that until a bond was filed, the stay which was conditioned on such a bond was inoperative. As the court explained:

To hold otherwise would render the last sentence of Fed.R.Civ.P. 62(d) meaningless. That sentence reads, "The stay is effective when the supersedeas bond is approved by the court." This provision, taken together with the 10–day 'automatic stay' provision of Fed.R.Civ.P. 62(a), clearly indicates that without a court-approved stay and a bond if one is ordered, the appealing party is protected against

attempts to satisfy a final judgment only for the first 10 days thereafter.

682 F.Supp. at 906.

This court is persuaded that the absence of any statutory provision in the Virginia Code renders it powerless to stay the garnishment proceedings begun after expiration of Rule 62(a)'s ten day stay and prior to the defendants' application for a stay pending appeal. The court will therefore deny that portion of the defendants' motion seeking to dismiss the garnishment summons.

The defendants have argued that the garnishments should be dismissed under principles of equity in order to protect pension and payroll monies contained in the garnished bank accounts which belong to persons unrelated to this action. While this argument is compelling, other equitable considerations also exist which weigh in favor of permitting the garnishments to go forward. The plaintiffs served their writs of garnishment only after their right to do so had vested. The plaintiffs have obtained a valid judgment in their favor. They did not attempt to execute the garnishments until after the ten day stay had expired. In fact, they delayed serving the garnishments until after post-trial motions had been fully argued and decided. The defendants therefore had ample opportunity to seek a stay prior to the execution of the garnishments. They have failed to assert adequate reasons to justify their delay. As the court in *Joss* explained:

> [A]llowing retroactive stays would enable a judgment debtor to delay the filing of a bond until threatened by the efforts of a creditor to execute upon the judgment, and then benefit from the bond as though it had been filed before execution was attempted.

682 F.Supp. at 906.

The scales of equity therefore weigh in favor of the plaintiffs on this issue. Adequate protection will be afforded any property arguably outside the reach of the garnishments when court proceedings are held following return of the summons. While these procedures could conceivably prejudice outside parties whose funds are tied-

up in these accounts, it is not for this court to alter the process by which judgments are legally executed. Such issues involve changes of law which can be properly instituted only by the legislature.

Accordingly, the defendants' request for dismissal of the plaintiffs' previously served garnishment summons upon the posting of a supersedeas bond is denied.

An appropriate Order shall issue.