2004-NMCA-024

85 P.3d 267

**CITY OF SUNLAND PARK,**
Plaintiff–Appellant,

v.

**The NEW MEXICO PUBLIC REGULATION COMMISSION,** Defendant–Appellee.

No. 23,238.

Court of Appeals of New Mexico.

Dec. 22, 2003.

Certiorari Denied, No. 28,475, Feb. 17, 2004.

Christopher P. Bauman, Molly B. McIntosh, Darci Carroll, Bauman, Dow, McIntosh & León, P.C., Albuquerque, NM, for Appellant.

Lee W. Huffman, Associate General Counsel, NM Public Regulation Commission, Santa Fe, NM, for Appellee.

## OPINION

BUSTAMANTE, Judge.

{1} The City of Sunland Park (City) appeals a district court Order Vacating Alternate Writ of Mandamus and granting the Public Regulation Commission (PRC) jurisdiction to regulate a utility which the City had condemned in an earlier action.[1] We reverse the district court, insofar as the Order held that an automatic stay in the condemnation appeal operated to prevent title in the utility from passing to the City, thereby allowing the PRC to retain rate-making jurisdiction over the utility.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Following the condemnation of the Santa Teresa Services Company (Utility) by the City, the City twice sought to increase the utility rates it charged customers. The first rate increase occurred after the City took possession of the Utility. The customers (Petitioners) filed a petition with the PRC to oppose the rate increase. The PRC subsequently issued an Order Docketing Declaratory Order, in which the PRC concluded that the City had not yet met the "owned and operated" requirements of NMSA 1978, Section 62-6-4(A) (2003) (providing the PRC with exclusive jurisdiction to regulate and

---

1. For an in depth recitation of the factual and procedural history of the condemnation action, *see City of Sunland Park v. Santa Teresa Servs. Co.,* 2003–NMCA–106, ¶¶ 1–34, 134 N.M. 243, 75 P.3d 843.

supervise public utilities, except utilities "owned and operated" by a municipal corporation), and therefore any rate increases required PRC approval. According to the PRC, although the City was in possession of the Utility, it was not yet the owner because it had not yet paid for the Utility's assets pursuant to NMSA 1978, Section 42A–1–27 (1981) (vesting title in the condemnor after the condemnation payment is deposited in the district court registry and the certification of deposit is recorded). Hence, the PRC concluded that until the City paid for the Utility's assets, the PRC retained jurisdiction to regulate rates. Complying with the PRC order, the City refunded Petitioners the excess amount charged over PRC-approved rates.

{3} On May 24, 2001, the City deposited the condemnation payment in the court registry pursuant to the Amended Condemnation Judgment and a stipulated order modifying the judgment. Payment was recorded in the district court registry on June 11, 2001. Although the record does not give any detail, the payment was initially made subject to a constructive trust at the City's request. The district court ordered the funds to be disbursed to the condemnee on July 5, thereby dissolving the constructive trust. The money was never disbursed, however, because the County obtained an automatic stay on the disbursement when the Intervenors appealed the condemnation action on July 9, 2001. Rule 1–062(E) NMRA 2003; NMSA 1978, § 39–3–23 (1966). On July 24, the City filed notice with the PRC that it intended to increase rates.

{4} In response to the second rate increase, the PRC issued an order requiring the City to comply with the previously issued Declaratory Order, refund any money collected in excess of the PRC-approved rate, and show cause why it should not be sanctioned. The City applied for and received an Alternate Writ of Mandamus in the district court to quash the order on the ground that the PRC lacked jurisdiction to control rates because the City "owned and operated" the Utility. However, after considering the PRC's answer and oral arguments, the district court entered an Order Vacating Alter-

nate Writ of Mandamus, concluding that because of the stay on the disbursement of funds, the City did not yet own the Utility and the utility rates were, therefore, subject to PRC approval. It is from this Order which the City appeals. We first address a few preliminary procedural issues before turning to the merits of the appeal.

## I. Mootness

◼ {5} After the appeal was taken in this matter, this Court affirmed the district court decision in the condemnation action. *City of Sunland Park v. Santa Teresa Servs. Co.*, 2003–NMCA–106, ¶ 96, 134 N.M. 243, 75 P.3d 843. Certiorari was denied by the Supreme Court on August 18, 2003, at which time the automatic stay expired. Thereafter, this Court requested oral argument and briefs from the parties to address the issue of mootness. In response, the PRC concedes that it has "permanently lost jurisdiction to proceed in [this matter]" and represents that it "will not entertain any matter attempting to invoke that jurisdiction." Despite these representations, the City opposes a dismissal for the simple reason that the Petitioners in the declaratory action have not abandoned their claims. Thus, the City argues that the underlying dispute over whether the PRC had jurisdiction during the two year, one month period in which the stay was in effect, and necessarily by implication, whether the City owes a substantial refund to the petitioners for the rate increase in effect during that time, is alive.

{6} We agree that the retroactivity issue is not moot. If the district court's order that the PRC had jurisdiction to prevent the City from increasing rates during the stay was left standing, it could affect the City's obligation to the Petitioners during that period. *See Atchison, Topeka & Santa Fe Ry. Co. v. State Corp. Comm'n*, 79 N.M. 793, 794, 450 P.2d 431, 432 (1969); *Massengill v. City of Clovis*, 33 N.M. 394, 396, 268 P. 786, 786 (1928) (holding that where appellant has material question left unresolved in the litigation, the appeal will not be dismissed as moot); *Littlefield v. N.M. Taxation & Revenue Dep't*, 114 N.M. 390, 392, 839 P.2d 134, 136 (Ct.App.1992). Principles of res judicata

could also affect the City's rights and liabilities in other proceedings in which title during this time period is at issue. Since the City and other persons have a clear stake in the outcome of this appeal, we will not dismiss this action as moot.

## II. Procedural Issues

■ {7} The PRC argues that the district court decision to vacate the writ was proper, because the City did not meet the technical requirements for obtaining an alternative writ of mandamus. The PRC contends first that the writ was legally insufficient because it did not contain any factual allegations necessary to authorize relief, as required by NMSA 1978, Section 44–2–6 (1953). Ordinarily, when an alternative writ is granted, "the application is functus officio, and the alternative [writ] becomes the initial pleading in the case and should state a cause of action within itself." *State ex rel. Burg v. City of Albuquerque*, 31 N.M. 576, 579–80, 249 P. 242, 244 (1926). Together, the writ and the answer form the issues that are before the court. *State ex rel. State Highway Comm'n v. Quesenberry*, 72 N.M. 291, 295, 383 P.2d 255, 257 (1963) ("The issues in mandamus are created solely by and are limited to the allegations of the writ and the answer thereto."). As a general rule, the "allegations of fact in the [application] form no part of the writ and cannot be considered in determining the legal sufficiency of a writ." *Brantley Farms v. Carlsbad Irrigation Dist.*, 1998–NMCA–023, ¶ 20, 124 N.M. 698, 954 P.2d 763.

■ {8} The legal sufficiency of an alternative writ, however, is properly raised in the respondent's answer. *See Quesenberry*, 72 N.M. at 295, 383 P.2d at 257–58 (reviewing court will not consider defenses or objections that are not pled in respondent's answer to a writ of mandamus); *State ex rel. Burg*, 31 N.M. at 580, 249 P. at 244. Even where the legal sufficiency of the writ is challenged by the respondent, defects in the pleadings can be waived, and the allegations in the application may be considered, where the respondent answers the allegations as if they were set forth in the writ. *Brantley Farms*, 1998–NMCA–023, ¶ 20, 124 N.M. 698, 954 P.2d 763; *State ex rel. Burg*, 31 N.M. at 582, 249 P. at 245.

{9} The PRC did not raise the legal sufficiency of the writ in its answer below. Therefore, the district court did not consider its legal sufficiency and the City did not have an opportunity to amend it. Moreover, the answer does not deny the factual allegations set forth in the application, except to deny the City's interpretation of our Order on Motion for Clarification regarding the stay. *See Quesenberry*, 72 N.M. at 294, 383 P.2d at 257 (deeming admitted, any factual allegations that were not denied in answer to the alternative writ of mandamus). Rather, the answer addresses, and hence preserves, the legal issue regarding the effect of the stay on the City's legal right to hold title. Since the factual allegations were not contested, either below or for that matter, on appeal, we conclude that the PRC admitted the factual allegations and waived its right to any defects in the writ. Hence, we decline to affirm the district court's decision on the sufficiency of the writ, and we will consider the allegations in the application and the attachments that were submitted in the record proper.

■ {10} The PRC next argues that the City had an adequate remedy at law since it enjoyed the right to appeal the Commission's order directly to our Supreme Court. Ordinarily, this is true when a party appeals a final order issued by the PRC. NMSA 1978, § 62–11–1 (1993); 17 NMAC § 1.2.39(H) (2001). However, where it is alleged, as it is here, that the PRC is acting outside the scope of its jurisdiction or refusing to perform under the Public Utility Act, NMSA 1978, Section 62–12–2 (1953) expressly allows any interested party to "bring suit by mandamus, prohibition, injunction or other appropriate remedy against the ... commission ... in the district court of the county in which the complaint or controversy arose." We, therefore, decline to affirm the district court's decision on this ground, as well.

■ {11} Finally, the PRC maintains that the City did not have a clear legal right to enforce since no court had ever ruled that it owned the Utility. "Mandamus lies only to force a clear legal right against one having a

clear legal duty to perform an act." *Brantley Farms*, 1998–NMCA–023, ¶ 16, 124 N.M. 698, 954 P.2d 763; *Laumbach v. Bd. of County Comm'rs*, 60 N.M. 226, 232, 290 P.2d 1067, 1069 (1955). A ruling by a court on the City's ownership interests was not necessary. By statute, title vested in the City after it made "payment in full to the clerk of the district court in accordance with the judgment in the condemnation action" and "[a] copy of the judgment showing payment [was] recorded in the office of the county clerk." § 42A–1–27(A), (B). Once the City satisfied the requirements of Section 42A–1–27, the City had a clear legal right to enforce. Although this Court does not adjudicate rights on mandamus, we have never held that a legal right must be evidenced by court order before an action in mandamus can be brought. We find that the district court's decision to vacate the writ cannot be affirmed on this ground either.

{12} To the extent that the PRC now argues that *full payment* was not made and title did not pass because the money was deposited into the court's registry subject to the terms of the constructive trust, we find this argument is without merit under the facts of this case. The constructive trust was dissolved by the district court's order authorizing the disbursement of the funds on July 5, 2001. The City's notice of intent to increase the utility rates and the automatic stay came about after this court ordered disbursement of the funds. Thus, assuming that "full payment" under Section 42A–1–27 means "unconditional payment in full," as the PRC argues, there were no conditions on the money when the stay went into effect.

{13} Further, to the extent that the district court may have interpreted Section 47A–1–27 to require disbursement of the funds to the condemnee before title passed, this interpretation is not supported by the plain language of the statute. Section 42A–1–27(A) plainly requires "payment in full to the clerk" not to the condemnee. Title vests, according to Subsection (B), when the certification of deposit is recorded in the district court, not when the money is disbursed to the condemnee.

### III. The Effect of the Automatic Stay

{14} In its Order Vacating the Alternate Writ of Mandamus, the district court ruled:

But for the Stay issued by the Court of Appeals, this Court would conclude that title to the [Utility] has transferred to the City, making it the owner of the [Utility]. Because of the stay, the City is not yet the owner and the [PRC] has jurisdiction to proceed in [the declaratory action].

The City argues that since title to the Utility passed to it by operation of law when it recorded the certification of deposit, the district court decision gave the stay improper retroactive effect to divest the City of title. According to the City, the plain language of Section 39–3–23 and Rule 1–062(E) provide that an automatic stay is effective as of the time the notice of appeal is filed. Although it cites no New Mexico authority in support, the City does cite several jurisdictions that have declined to give retroactive effect to stays. Finally, the City argues that the decision is contrary to clear legislative intent to provide certainty in condemnations, frustrates the City's efforts in running the Utility, and creates a risk to public safety and welfare.

{15} The PRC responds that the stay had retroactive effect under *Quintana v. Knowles*, 113 N.M. 382, 827 P.2d 97 (1992), by placing the parties in the position they enjoyed before the district court's decision. As further support, the PRC cites to other jurisdictions that follow this rule. The PRC also urges this Court to disregard the arguments and supporting documents raised by the City in its Motion for Reconsideration below, since the district court did not consider them in denying the motion.

### Motion for Reconsideration

{16} As an initial matter, we address whether it is proper for this Court to consider the material provided in the City's motion for reconsideration. In the motion, as on appeal, the City argues that the district court's decision was injurious to public safety and welfare. An affidavit was attached to the motion describing how the Utility was in violation of state and federal waste water disposal standards which required immediate

action. After filing the motion, the City requested, and was granted, an extension of time in which to file a notice of appeal. The City supplemented the motion with additional material, but filed a notice of appeal before the motion was heard. Ultimately, the district court denied the motion, finding it lacked jurisdiction because of the appeal. *Wagner Land & Inv. Co. v. Halderman,* 83 N.M. 628, 630, 495 P.2d 1075, 1077 (1972) (filing notice of appeal divests trial court of jurisdiction). The City replies that the order denying the motion indicates that the district court *considered* the motion, but was *prevented* from ruling on it because it lost jurisdiction.

{17} Under these facts, it is irrelevant that the district court "considered" the motion under these facts. Generally, this Court considers additional material attached in support of a motion for reconsideration *only when the district court considers or relies on the material to make its final determination. In re Estate of Keeney,* 121 N.M. 58, 60, 908 P.2d 751, 753 (Ct.App.1995). Normally, an appellate court may not consider the documents if the district court's decision is not based on that material. *Selby v. Roggow,* 1999-NMCA-044, ¶¶ 10–11, 126 N.M. 766, 975 P.2d 379 (declining to consider additional information in motion for rehearing because trial court did not consider it in ruling it was without jurisdiction to rule on motion); *In re Estate of Keeney,* 121 N.M. at 60, 908 P.2d at 753 ("Because the trial court in *Schmidt [v. St. Joseph's Hosp.,* 105 N.M. 681, 684–85, 736 P.2d 135, 138–39 (Ct.App. 1987)]* did not consider the affidavits when making its determination as to summary judgment, this Court could not review them as they were not among the affidavits upon which the trial court's decision was based."). In this case, the affidavit and other material had no impact on the district court's decision to deny the motion. Because the district court did not consider or rely on the material in reaching its decision, we find that it is not properly before this Court on appeal. As such, we will not consider the material. However, under the standard of review applicable to this appeal, we are free to consider de novo the legislative intent behind a statute.

**Standard of Review**

{18} The focal issue is whether the County's automatic stay under Section 39–3–23 and Rule 1–062(E) in the condemnation case meant that the City could not be considered to be in title of the Utility, even though it paid the judgment per Section 42A–1–27, thus allowing the PRC to assert jurisdiction over the City's rate-making under Section 62–6–4(A). This is a question of law that we review de novo. *United Water N.M., Inc. v. N.M. Pub. Util. Comm'n,* 1996-NMSC-007, 121 N.M. 272, 274, 910 P.2d 906, 908 (concluding that the scope of former PUC's jurisdiction, which is defined by statute, is a question of law). Reviewing courts "accord little deference to [an] agency's own interpretation of its jurisdiction." *Id.* at 275, 910 P.2d at 909 (internal quotation marks and citation omitted); *El Vadito de los Cerrillos Water Ass'n v. N.M. Pub. Serv. Comm'n,* 115 N.M. 784, 787, 858 P.2d 1263, 1266 (1993).

**The Stay had no Retroactive Effect on the Title Held by the City**

{19} The PRC is a creature of statute that derives its authority and jurisdiction from the New Mexico Public Utility Act. *See* NMSA 1978, §§ 62–3–1 to –5 (1953, as amended through 2003); *El Vadito de los Cerrillos Water Ass'n,* 115 N.M. at 787, 858 P.2d at 1266. Under the Act, the PRC has no jurisdiction over public utilities that are owned and operated by a municipal corporation, unless they agree otherwise. § 62–6–4(A). As stated above, the City took title of the Utility, by statute, when it deposited the condemnation payment in the court registry and recorded the certification of deposit. The moment it did so, the PRC lost jurisdiction over the Utility, and could not regain jurisdiction, unless the automatic stay retroactively divested the City of its right to hold legal title.

{20} The Eminent Domain Code does not address the effect of a stay in condemnation appeals. *See* NMSA 1978, §§ 42A–1–1 to –34 (1981, as amended through 2001). Where the Code is silent, the Rules of Civil Procedure are applicable,

unless application of the rules would be inconsistent with it. § 42A–1–15. In New Mexico, filing an appeal by the State or its political subdivision triggers the automatic stay provisions of Section 39-3-23 ("When the appellant . . . [is] a county . . ., the taking of an appeal . . . operates to stay the execution of the judgment, order or decision of the district court without bond.") and Rule 1–062(E) ("When an appeal is taken by the state or . . . any political subdivision, . . . the taking of an appeal shall . . . operate as a stay."). *Cf.* Rule 1–062(D) ("The stay is effective when the supersedeas bond is approved by the district court."). Under the plain language of the statute and the rule, a stay is generally prospective rather than retroactive, unless otherwise specified.[2] *State v. Davis*, 2003–NMSC–022, ¶ 6, 134 N.M. 172, 74 P.3d 1064 (interpreting legislative intent is primarily gleaned through plain language of a statute, unless language is ambiguous or meaning would render it absurd, unjust, or contrary to legislative spirit).

{21} Our courts have also consistently held that a stay merely halts proceedings "without destroying the force and effect of the judgment and leaves the proceedings in the condition in which it finds them." *Higgins v. Fuller*, 48 N.M. 215, 217, 148 P.2d 573, 574 (1943) (internal quotation marks and citation omitted); *Michaluk v. Burke*, 105 N.M. 670, 675, 735 P.2d 1176, 1181 (Ct.App.1987) ("A stay stops any future executions on the specific judgment appealed from."). When the automatic stay issued, the district court's order had been executed: the City was in possession of the Utility, and it had deposited and recorded the condemnation payment in the district court registry. The only act left undone by the district court was to release the funds to the trustee and the intervenors. Hence, the stay merely prevented the final disbursement of the money. The stay had no effect on the title since title had already vested.

{22} Our conclusion that a stay is generally not retroactive is also consistent with the prevailing common law rule, as well as several other jurisdictions that generally decline to give retroactive effect to a stay. *See Secure Eng'g Servs., Ltd. v. Int'l Tech. Corp.*, 727 F.Supp. 261, 264 (E.D.Va.1989) (surveying jurisdictions that follow the common law rule enunciated in *Freeman Trustee v. Dawson*, 110 U.S. 264, 270, 4 S.Ct. 94, 28 L.Ed. 141 (1884), that a supersedeas bond generally does not retroactively defeat an executed judgment). The jurisdictions that give retroactive effect to a stay, and upon which the PRC relies, have done so through legislative enactment. *Id.* As indicated above, New Mexico law appears to give prospective effect to stays, unless otherwise provided.

{23} The PRC contends that *Quintana* is controlling. Despite New Mexico law to the contrary, the PRC cites *Quintana* for the broad proposition that a stay "restores the parties to and maintains them in the status they enjoyed prior to the judgment or decree in the trial court." 113 N.M. at 382–83, 827 P.2d at 97–98. *Quintana* is inapposite. *Quintana* was a direct appeal, involving a party who quieted title to land he did not possess. Appellant was in possession of the land at the time of the decision, but did not request a stay on appeal. *Id.* at 382, 827 P.2d at 97. The only issue before the Court was whether the right to appeal a decision involving title to property was conditioned on posting a supersedeas bond. *Id.* at 383–84, 827 P.2d at 98–99. When an appellant in possession of land loses the land to an adversary but desires to maintain the status quo by remaining in possession of it during the appeal, a bond would normally protect appellee's interests and compensate appellee for any damage incurred to the property during

---

2. We can envision only rare instances where a stay might have retroactive effect in condemnation actions, such as under the terms of the stay itself or where there was a direct appeal challenging the condemnation. Nothing in our orders regarding the stay provided for a retroactive effect. To the contrary, as we stated in our Order on Motion for Clarification of Court Order, the Orders "were directed solely at the district court's July 5, 2001, Order Authorizing Disbursement of Funds." We further declined to expand the stay and suggested that such requests be directed to the district court. There is no indication in the record that the parties ever did that. Moreover, as we explain below, the PRC and the Utility did not appeal the condemnation judgment. The other Intervenors had no standing to do so. Thus, we find no basis for the argument that the stay affected the City's title on these limited grounds.

the appeal. *See id.* at 383, 827 P.2d at 98. The Court held that a bond was not required under the plain language of the property supersedeas bond statute, even though it left appellee in a perilous position. *Id.* at 384, 827 P.2d at 99. Hence, the quoted language is not only dicta, it is not controlling.

{24} We read *Quintana* to stand for the broad proposition that "[a] *bond* is designed to protect the appellee against loss and preserve the status quo while the case is appealed" where appellant is in possession of the disputed land. *Khalsa v. Levinson,* 2003–NMCA–018, ¶ 21, 133 N.M. 206, 62 P.3d 297 (citing *Quintana,* 113 N.M. at 382–83, 827 P.2d at 97–98); *see Higgins,* 48 N.M. at 217, 148 P.2d at 574 (interpreting property supersedeas bond statute to require appellant who is in possession of land granted to another, to post a bond to maintain the status quo). Consequently, we find it has no applicability to the present case. The PRC has made no claim of title to the Utility, and, further, it withdrew from the condemnation action prior to trial. *City of Sunland Park,* 2003–NMCA–106, ¶ 5, 134 N.M. 243, 75 P.3d 843. The County had only a monetary interest in the condemnation appeal. *Id.* ¶ 6. Indeed, none of the Intervenors even had standing to challenge the passing of title to the City. *See id.* ¶ 48. Hence, the only purpose the stay could serve in the condemnation action was to prevent the funds from being disbursed.

{25} Our reading of Section 39–3–23 and Rule 1–062(E) as they pertain to appeals in condemnation actions is consistent with the legislative intent and policies behind the Public Utility Act and Eminent Domain Code. The legislature has allowed municipalities to condemn and operate utilities, without being subject to PRC regulation and control. *See United Water N.M., Inc.,* 121 N.M. at 277–78, 910 P.2d at 911–12. The PRC was created to serve as a watchdog for the public interest. *See id.* (citing Public Utility Act policy statement, Section 62–3–1(B), that the combined interests of the public, consumers, and investors requires the regulation and supervision of public utilities). Nonetheless, the legislature clearly believed that municipally owned and operated utilities did not need PRC supervision. *Id.* at 278, 910 P.2d

at 912 (finding the legislature concluded that municipalities were fully capable of protecting the citizens' interests without commission oversight); *see also Fleming v. Town of Silver City,* 1999–NMCA–149, ¶ 11, 128 N.M. 295, 992 P.2d 308 ("Although a municipality operates within its propriety function when it owns and operates a water utility, it nevertheless is a governmental entity which otherwise performs governmental functions[.]").

{26} The legislature also recognizes a need to provide certainty in condemnation actions where both public and private rights and interests are at stake. *See generally* §§ 42A–1–1 to –34 (setting forth procedure and rights in condemnation actions); *see also* § 42A–1–22 (providing for immediate possession prior to judgment); § 42A–1–27 (vesting title in condemnor immediately upon recording certification of deposit in court registry); *see also City of Sunland Park,* 2003–NMCA–106, ¶¶ 43–44, 134 N.M. 243, 75 P.3d 843; 46–47 (discussing constitutional provisions touching public and private interests at stake in condemnation, as well as procedure in condemnations set forth by the legislature).

{27} In light of the clear legislative intent to protect the public, as well as private interests in these areas, it would be unreasonable to find that the stay operated to restore jurisdiction to the PRC, while leaving the rights of both the City and the Utility in limbo. *See United Water N.M., Inc.,* 121 N.M. at 276, 910 P.2d at 910 ("Our interpretation of the statute[s] must be consistent with legislative intent, and our construction must not render the statute[s'] application absurd, unreasonable, or unjust.") (internal quotation marks and citation omitted).

{28} Inherent in these observations is the principle that dual supervision of a municipally owned and operated utility by an outside agency such as the PRC is not only contrary to, but potentially frustrating to, the public interest. If the stay were to retroactively divest the City of title and allow the PRC to regulate it as appellees urge, the PRC would be regulating a utility wholly paid for and operated by a municipality, and ultimately, interfering in City budget and management decisions, as well as the City's ability to provide adequate services to the

**152**

public. Surely, our legislature did not intend such a result.

{29} The PRC's argument is particularly unpersuasive in this case, where the City met every statutory condition required to gain title and so divest the PRC of jurisdiction, and the condemnation judgment was upheld on appeal.

## CONCLUSION

{30} Accordingly, we reverse the district court decision and find that the stay did not operate retroactively to give the PRC jurisdiction over the Utility during the condemnation appeal.

{31} IT IS SO ORDERED.

WE CONCUR: A. JOSEPH ALARID and CYNTHIA A. FRY, Judges.